The Chancellor.
The bill in this cause was filed to restrain proceedings at law for the recovery of a promissory note for two thousand nine hundred dollars, given by the complainant to the defendant, and also for the settlement of an alleged trust, subsisting in the hands of the complainant, of certain real and personal estate of the defendant.
The admitted facts of the case are, that the defendant, Kelson, by deed of bargain and sale, executed by himself and his wife, bearing date on the twenty-sixth day of October, eighteen hundred and fifty-nine, for the alleged consideration of four thousand five hundred dollars, convoyed to the complainant a farm, of about ninety acres, situate in the town of East Eishkill, in the county of Dutchess, and state of New York. The conveyance is made subject to two mortgages upon the premises for two thousand four hundred and forty-six dollars, the payment of which was assumed by the grantee as part of the consideration money for the purchase. By bill of sale, bearing even date with the deed, for the consideration therein expressed, of nine hundred and sixty-three dollars and thirteen cents, the defendant sold and transferred to the complainant a large amount of personal property then upon the farm, consisting of stock, farming utensils, hay, grain, and other chattels. To represent a part of the consideration (real or fictitious) of the conveyance and transfer of the said real and personal estate, the complainant gave to the defendant the promissory note in question for two thousand nine hundred dollars, bearing date on the twenty-fifth day of October, eighteen hundred and fifty-nine, and payable three months after date to the defendant or order.
The giving of the note is admitted by the complainant, but lie alleges that it was given without consideration. The case made by the bill is, that the whole transaction was merely colorable. That the conveyance of the land and the bill of sale of the chattels were made without consideration. That they were accepted by Servis, at the instance and for the sole benefit of the defendant, and were held by him upon *96 a secret trust that they should be sold at an early day, and the proceeds of the sale applied to the satisfaction of the debts of the defendant, and the surplus, if any, after paying the expenses of executing the trust, to be paid to the defendant himseif. In support of these allegations, the bill sets out an instrument of writing, bearing date on the twenty-fifth day of October, eighteen hundred and fifty-nine, cotemporaneous with the note purporting to have been executed under the hand and seal of George Nelson, the defendant, and to have been attested by Hercules Weston. That instrument is as follows: “ This is to certify that Robert L. Servís is to give me his note for two thousand nine hundred dollars, as a consideration for my farm in Dutchess county, state of New York; but said Robert L. Servís is not to pay said note, as it is understood that I deed him my farm to keep my creditors off until such time as I can sell my farm without a sacrifice: and the proceeds of such sale shall go to pay my creditors. Now the meaning of this agreement is, that the said Servís has no real consideration for the said .note, but does this to befriend his friend, as he thinks he can pay all he owes, and have something left, if he has a chance to make it without sacrificing his property; and the said Robert L. Servís is to deed the farm to any one that I may order, and at any time, and the said Robert L. Servís is to be at no expense, as he is doing the same for my whole benefit.”
The defendant, by his answer, explicitly denies that the conveyance and transfer of the real and personal estate were made upon the understanding and trust set forth in the complainant’s bill. He denies that the note was given under the circumstances set forth in the bill of complaint, or with any understanding that it should not be paid. He denies that any such agreement as that set forth in the bill of complaint, and therein alleged to have been drawn by Hercules Weston, was prepared by his assent, direction, or knowledge, or was ever signed by him. He alleges that the deed for the land *97 and the bill of sale of the personal property were made, respectively, in pursuance of bona fide contracts of sale, and for the consideration therein respectively stated, amounting to five thousand four hundred and sixty-three dollars and thirteen cents; that the mortgages upon the land, which were agreed to be assumed by the purchaser, amounted to two thousand four hundred and forty-six dollars; that the complainant’s note for two thousand nine hundred dollars was accepted in payment for that amount, and that the balance of the purchase money, one hundred and seventeen dollars and thirteen cents, was paid in cash on the delivery of the deed.
The issue of fact presented by the pleadings in the cause is, whether the conveyance and transfer of the real and personal property made by the defendant to the complainant were made in pursuance of a bona fide contract of sale, and the note for two thousand nine hundred dollars given in part payment of the purchase money — or whether the whole transaction urns fictitious, and designed to protect the defendant’s property against the claims of his creditors. The material evidence in support of this issue, on the part of the complainant, is the instrument of writing alleged to have been given by Nelson to Servis immediately before the execution of the note, and to have been drawn and attested by Hercules Weston.
The parties have both been examined, and have testified very explicitly upon this point. They each sustain the case, as sworn to by them respectively in the bill and answer. The complainant states with great minuteness the time, place, and circumstances attending the making of the contract and the preparation and execution of the instrument. He testifies that the contract was drawn by Hercules Weston, and was executed in his presence at Washington, in the county of Middlesex; that he saw the instrument signed by Nelson, and attested by Weston, the subscribing witness. The defendant, on the other hand, testifies that the signature to *98 the instrument is not his handwriting; that no such instrument was ever prepared by Weston, with his instructions or with his knowledge, consent, or approbation; that he never knew Weston, and never heard his name till the commencement of this suit; that he never executed the instrument; that he left Washington at an early hour on Monday, the twenty-fourth day of October, and that on Tuesday, the twenty-fifth day of October, when the paper purports to have been executed, he was in Dutchess county, in the state of New York. The evidence thus far, it is obvious, does not materially aid the plaintiff’s case.
Weston, the subscribing witness, died soon after the date of the instrument, and before the commencement of the controversy. The complainant therefore, as he had a right to do, resorted to proof of the signature of the subscribing witness as proof of the genuineness of the instrument. He called for this purpose a large number of witnesses, consisting of the friends and neighbors of Weston, of those who had transacted business with him, and were' familiar with his writing, including members of his family, most of whom testified with great confidence their belief that both the body of the instrument and the signature of the attesting witness were in the handwriting 'of Hex’cules Westoxx. Oxx the other haxxd, the defexxdant called the px-esident and cashier of the Bank of New Brunswick, who were familiar with the writing of Westoxx, and who testify that the signature of the attesting witness is not his gexxuine signature. Five other persons, experienced in the examinatioxx of handwriting, and conversant with the subject as bank officers or otherwise, were examined as experts, and all testify that the signature of Hercules Weston, as axx attesting witness to the instrument, is not a genuine signature.
Upon this evidence the complainant rests this part of his case. lie made xxo attempt to prove that the íxame of " George Nelson,” by whom the instrument purports to be executed, was the genuine signature of the defendant. Proof of the signature of the subscribing witness alone is prima *99 facie evidence of the due execution of the instrument. 1 Phill. Ev. 420; Phill. & Amos 661; 1 Stark. Ev. 328.
But it is by no means conclusive. The execution of the instrument, where the subscribing witness is dead or cannot bo produced, maybe proved by other evidence; and it is usual in such case to give evidence also of the handwriting of the obligor. 1 Stark. Ev. 328; 1 Greenl. Ev., § 572; Oliphant v. Taggart, 1 Bay 255.
It has been, indeed, a vexed question whether, in all such cases, the signature of the party executing should not also be proved. Kay v. Brookman, 3 Car. & P. 555; Sluby v. Champlin, 4 Johns. R. 461; 7 Term R. 266, note a; 1 Phill. Ev. 420, note a; 1 Gilbert’s Ev. 104.
There is not only a total absence of any proof, on the part of the plaintiff, of the genuineness of the signature of the party by whom the instrument purports to have been executed, but witnesses on the part of the defendant, who are acquainted with his handwriting, testify that the signature to the instrument is not genuine; and it cannot escape observation that the signature of the name of George Nelson to the instrument in question bears a very faint resemblance to the signature attached to the deed and bill of sale, which were executed by him upon the same day. I say upon the same day, for although these papers are dated, and the deed purports to have been acknowledged on the twenty-sixth day of October, yet the evidence shows that they were executed, and the deed recorded on the same day wdth the note, and the deed is recorded on the twenty-fifth. The presumption therefore is, that the date of the deed, of the bill of sale, and of the acknowledgment of the deed, which are all drawn and witnessed by the same person by whom the acknowledgment is taken, are erroneously dated, and that all the genuine papers were executed on the twenty-fifth of October, the day upon which the deed is recorded.
In view of this evidence, I am not satisfied that the instrument in question was executed by the defendant. It is not necessary, for the purposes of this cause, that it should *100 be pronounced a forgery. That ought not to be done in a case of any doubt without the intervention of a jury. It is enough to say that its genuineness is not satisfactorily established. The evidence in support of the genuineness of this paper, in connection with the complainant’s own testimony, is all the pronf that is offered of the existence of the alleged trust. The evidence does not support the allegations of the bill.
But if the allegations of the bill had been fully proved by parol, or if the genuineness of the written instrument had been established, there would have been insuperable difficulties in the way of granting the relief prayed for.
By the statute of frauds, declarations or creations of trusts or confidences of any lands must be manifested and proved by some writing signed by the party who is by law enabled to declare such trust, or by his last will in writing, or they shall be utterly void and of no effect. A grantee cannot set up for his own protection under an absolute deed the existence of a parol trust. Nix. Dig. 306, § 11; Hutchinson v. Tindall, 2 Green's Ch. R. 357.
If the written instrument set out in the bill of complaint had been proved to be genuine, it would not have been competent evidence of the existence of the trust alleged in the bill. It contains no declaration of trust in favor of the creditors of Nelson. It gives no authority to Servis to sell the property or to execute any trust whatever. It simply empowers him to hold the land “ to keep off the creditors of Nelson ” until he can effect a sale without a sacrifice; and it is expressly provided that Servis shall deed the farm to any one, and at any time, that Nelson should order. This is obviously not the declaration of a trust in writing, but a mere arrangement to hinder and delay creditors for the benefit of Nelson, which is void at law as against creditors, and which a court of equity would not sustain.
Nor, on the other hand, will a court of equity relieve a party from the effect and obligation of such contract voluntarily entered into. As between the parties themselves a con *101 veyance of land to hinder or defraud creditors is valid, and will not be sot aside or relieved against at the instance of either party, each of whom is partioeps criminis.
It is obvious, moreover, that the trust sought to be established cannot be enforced in this court. The land is not within its jurisdiction nor under its control.
The bill must be dismissed with costs.