MARGARET RUCKMAN, appellant,

*v.*

WILLIAM W. CONOVER, respondent.

Whenever it appears that the object of a suitor filing a creditor's bill is to aid a person who has placed his property in the name of another to hinder and defeat creditors, to regain control of such property, a court of equity will refuse its assistance.

---

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is reported in *Conover* v. *Ruckman, 9 Stew. Eq. 493.*

Ruckman *v.* Conover.

*Mr. Jacob Weart,* for appellant.

*Mr. Chillion Robbins,* for respondent.

The opinion of the court was delivered by

REED, J.

The bill in this cause sets out that William W. Conover is a creditor of Elisha Ruckman, deceased, in the sum of $600 upon a note of hand which came to said Conover by assignment from Robert Allen; that for the purpose of collecting the said note, he caused to be issued out of the court of common pleas of Monmouth county a writ of attachment directed to a coroner of said county, commanding that officer to attach the rights and credits &c., of said Elisha Ruckman; that the said coroner did attach the rights and credits of said Ruckman existing by virtue of a writ of execution in the hands of the sheriff of Monmouth county. The right and credit upon which this attachment was intended to operate are stated to have arisen from the following facts: One John Dorn with Mary, his wife, upon August 1st, 1877, made a mortgage upon their lands situate in Monmouth county, to Margaret Ruckman to secure to her the payment of the sum of $3,000; that the money loaned to the Dorns for which this mortgage was given was the property of Elisha Ruckman and not of his wife, but that the mortgage was taken in her name to hinder and defeat the creditors of Elisha. The bill then states that the said mortgage had been foreclosed at the instance of Margaret, and an execution upon a decree in her favor had been placed in the hands of the sheriff of Monmouth county, and the property named in the said mortgage had been advertised to be sold by virtue of the said writ. By a supplemental bill it was further stated that after the filing of the original bill the mortgaged property had been sold and the sheriff had received a check for the amount of such sale, and that after the receipt of such check by the sheriff a writ of attachment was again served upon the sheriff.

Answers were filed to the original and supplemental bills, and

the cause ended in the court below with a decree adjudging the money in the hands of the sheriff to be the money of Elisha Ruckman, and ordering it to be paid into the court of chancery, to be applied to the payment of the debt of Conover and other creditors applying under the attachment.

Upon the question mainly discussed in the opinion of the vice-chancellor we entirely concur in the views there expressed. We think it is clear that the money loaned and secured by the mortgage to Margaret Ruckman was the money of Elisha. We think it is equally clear that the mortgage was taken in the name of Margaret, with her cognizance, to defeat the claim of the creditors of Elisha. This being so, it follows that any *bona fide* creditor of Ruckman who has established a lien upon this mortgage, whether in its original shape or in any form into which it had been transmuted, could invoke the aid of a court of equity in impounding this credit and causing it to be applied in liquidation of his demand. This is an every-day occurrence in the administration of equity jurisprudence. But while the rule is elementary that property so covertly placed in the name of another can be seized and devoted to the payment of the debts of the equitable owner, yet there is another rule equally element-ary, namely, that when a person has so placed his property in the name of another for this purpose, he cannot invoke the aid of the court, either directly or indirectly, to recover the control of the property or direct the disposition of it in any form. And whenever it appears that the object of a suitor, under the guise of a creditor's bill, is to aid the fraudulent disposer to regain the control of his property, the court will refuse its assistance. From a consideration of the testimony taken in this case, I am con-strained to the conclusion that the complainant below is placed in this position.

It is clear that Mr. Allen, who had been the adviser of Elisha Ruckman for a considerable period of time and in a variety of matters, knew that the form in which the Dorn mortgages were taken was designed by Ruckman to defeat the claim of Berk-holtz and others. He knew the desire of Ruckman to recover the money which he had so loaned upon the Dorn mortgage.

The whole case shows that with the natural desire of a counsel seeking to further the interests of his client, he cast about for some means for legally reaching that result.    That the taking of this note for $600 and its assignment to Conover, together with the subsequent issuance of the attachment, was in futherance of this object, I have no doubt.    There are many things in the testimony which lead to this conclusion.    The most important is the fact that at the time Mr. Allen took this $600 note he seems to have held another note of Ruckman's for either $8,000 or $1,000; he does not recollect for which sum.    This note he says he never used; nor does he seem to have tried to collect it.    He admits that previous to the giving of the $600 note, he had a talk with Ruckman about having the Dorn money attached by some of Ruckman's creditors.    A previous attachment had issued out of the United States circuit court, upon which writ was the name of Mr. Allen, as attorney, and he says the question of attaching the Dorn money under this attachment was discussed, but this attachment was abandoned.    Afterwards, he advised Conover to sue out the present writ of attachment, telling him that there would probably be some property in the hands of the sheriff of Monmouth county which Ruckman claimed.    He met Ruckman and Doremus together, by Ruckman's appointment, and suggested that the claim which Doremus held against Ruckman should be put in, and he took the affidavit of Doremus and mailed it to Judge Robbins, for the purpose of having Doremus admitted as a creditor in the attachment suit.

During the pendency of these attachment proceedings about $50,000 was paid Ruckman as the proceeds of the sale of the Palisade property.    Of this payment Mr. Allen had knowledge, but took no steps to secure his own claim or that of Conover or Doremus.    These are prominent features in a case the whole of which impresses me with the conviction that the present suit was instituted at the suggestion of, and in aid of, Ruckman, through the application of this property to his debts, while he held undisturbed his own property in the state of New York. Nor, in the judgment of this court, does the fact that Conover

Ruckman v. Conover.

and not Allen is the complainant in the suit below, aid the case of the respondent. The $600 note was assigned to Conover with the personal guaranty of Mr. Allen. The amount of this note was endorsed upon another note of Allen's for a larger amount, which Conover already held. That he took the assignment of the $600 as a part payment of the larger note, or for the purpose of additional security, is refuted by his own testimony. He says that he knew nothing about Ruckman, and did not care anything about him. He says, " I had Robert Allen's guaranty of the note, and that was good enough for me." He seems to have had no object in taking the note, except as such action might aid Mr. Allen. All the subsequent steps taken relative to the collection of the note seem to have been entirely the acts of Mr. Allen. Mr. Allen, he says, requested him to issue the attachment. Mr. Allen selected the attorney. He says that he knew nothing of the filing of the bill, and all he knew was that he was called upon to make the affidavits to the bill. He says he expects Mr. Allen to pay the expenses of this suit, in case of its failure, and that he relies upon the guaranty to cover them. The evidence, we think, shows that the assignment had no object beyond that of permitting the proceedings in this case to be carried on in the name of some one other than the attorney of Elisha Ruckman.

The decree below should be reversed.

For affirmance—THE CHIEF JUSTICE, PARKER, SCUDDER, COLE, PATERSON—5.

For reversal—DEPUE, DIXON, KNAPP, MAGIE, REED, VAN SYCKEL, GREEN, KIRK, WHITAKER—9.