MARY E. HILDEBRAND et al.

*v.*

ANNE MADELINE WILLIG et al.

[Filed January 12th, 1903.]

1. Delivery of a deed is matter of intention, rather than action in any definite form. Acts or declarations of the grantor and grantee, which, taken in connection with the surrounding circumstances, indicate that the parties intended to deliver the deed, and believed they had done so, will be held to be a delivery.

2. Mere proof of registration of a deed is not in itself conclusive evidence of a delivery. But proof of registration, with the assent of the parties, is forceful evidence of a delivery.

3. Where a grantor, in anticipation of his entering upon a new business, conveys land to a grantee for the purpose of preventing its application to payment of the grantor's possible debts in case financial misfortune should

result from the venture, the conveyance is obnoxious to the statute of frauds, as made with an intent to hinder creditors.

4. Such a conveyance is invalid as against the creditors of the grantor, but is valid as between the grantor and grantee and their heirs-at-law.

5. A court of equity will not aid the heirs-at-law of such a grantor to declare such a deed to be a nullity, nor will it direct a reconveyance to them. It will leave the title to the land where the intending fraud-doers place it.

6. Where it is shown that a conveyance was made with such an intent, the court will not be induced to lend its aid because it is proven that the feared misfortune did not in fact happen. The court will say to applicants for relief in such a case, "it is no ground for relief, that although you intended to cheat creditors if occasion should require, the expected occasion did not happen, and your preparation to defraud creditors was therefore unnecessary."

On bill for relief on final hearing.

The bill in this case is filed by Mary E. Hildebrand, the widow of William P. Hildebrand, and his six children, some of whom are infants, against Anne Madeline Willig, the widow of Henry Willig, and Clarence Henry Willig, the only child and heir-at-law of Henry Willig, and George Bundens, administrator, &c., of the personal property whereof Henry Willig died seized.

The bill shows that on January 28th, 1901, Hildebrand (then living), the husband of Mary E. Hildebrand and father of the rest of the complainants, was the owner of a lot of land, of sixty-five acres and a fraction, lying in Franklin township, Gloucester county. It is alleged in the bill that Mrs. Willig was seized of an adjoining piece of land, and that Hildebrand was desirous of conveying the title of his tract to Mrs. Hildebrand, his wife, in order that she might have title to both tracts and make them one farm; and to accomplish that result, the bill says, Hildebrand and his wife agreed and arranged with Willig (then living) to convey the premises to Willig in fee, Willig and his wife were immediately to reconvey the premises to Mrs. Hildebrand, no consideration to pass for either conveyance. The bill further alleges that, in pursuance of that agreement, Hildebrand and his wife, on the 28th day of January, 1901, secured Mr. Stratton, a conveyancer, to draw a conveyance from Hildebrand and wife to Willig, the consideration price being $1, and that on

that day the parties did so convey to Willig, by deed in fee-simple; that it was further agreed by the grantors that Stratton should take the deed to the office of the county clerk and have it recorded, but not to deliver the same to the said Willig, but to return it to Hildebrand when recorded.

The bill further alleges that, acting on those instructions, Stratton did, on the 29th of January, 1901, have the deed recorded and procured it to be returned to him from the clerk, and then sent it back again to Hildebrand. The bill alleges that the deed was never delivered by Hildebrand, or by anyone for them, to Willig, or to anyone for him; that no consideration passed between Willig and Hildebrand for the deed, and that the value of the property is $1,500; that, through mistake, the intention of Willig and wife to complete the agreement was never carried out, and although Hildebrand often requested Willig to make the deed to Mrs. Hildebrand, and although Willig promised to do it, yet, being the son-in-law of Hildebrand and the parties relying upon each other that the intention of the parties concerned would be carried out, the conveyance was not made; that on the 16th day of September, 1901, Willig having not yet reconveyed to Mrs. Hildebrand, departed this life intestate, leaving him surviving his wife (the defendant) and one son, his heir-at-law. Administration was then granted upon his estate to George Bundens, the wife and heir-at-law being defendants to this suit, the heir-at-law being a babe nine months old.

The bill further shows that on the 25th of October, 1901, William P. Hildebrand, before any steps could be taken to protect his interest, departed this life intestate, leaving the complainant Mary E. Hildebrand and the other complainants as his heirs-at-law; that Hildebrand, up to the time of his death, occupied and enjoyed the premises without any claim by Willig or any of the defendants upon the property, and that Hildebrand, up to the time of his death, has paid the taxes. The bill charges that Bundens, administrator of the Willig estate, threatens to apply the property conveyed by the deed, by application to the orphans court, to the payment of the debts of Willig; that the complainants are unable to obtain from Mrs. Willig and the

infant child a release to them of their claim to the premises, and are obliged to seek relief in this court. The bill prays discovery by the defendants of the inducements to the making of the deed and under what agreement; and, by way of relief, that the deed may be set aside and canceled and declared null and void, and that the complainant may have such further and other relief as the nature of the case may require.

A decree *pro confesso* has been taken against Mrs. Willig, and appearance is made for the infant defendant, but no answer appears to have been filed for him. The answer of the defendant George Bundens, administrator of Henry Willig, deceased, admits that, on the day of the making of the deed, Hildebrand was possessed and seized of the premises, and that they are correctly described in the bill; and that Mrs. Hildebrand owned the adjoining piece of land, but denies that it was ever Hildebrand's intention to convey the premises to Mrs. Hildebrand; denies that there was any agreement between the parties to that effect, and denies that Willig ever agreed so to convey. It admits that Stratton drew the deed; that the consideration of $1 is the named price in the deed, but denies that Stratton was the agent of Mary Hildebrand, and says he acted in the transaction as agent for William P. Hildebrand and Henry Willig. It admits the execution of the deed conveying the premises to Willig, but denies that it was made in pursuance of any agreement that he should reconvey to Mrs. Hildebrand, or upon any expectation on her part that the premises would be reconveyed to her. Admits the acknowledgment of the deed, and that Stratton sent it to the clerk, but denies that Hildebrand and his wife instructed Stratton not to deliver it to Willig. On the contrary, the answer says the deed was delivered to Willig after it had been recorded; denies that it was through any mistake that Willig did not reconvey, and for the reason that there never was any such purpose or intention; admits the death of Willig and Hildebrand, and that the parties, complainants and defendants, are their wives and children and heirs-at-law. The answer of the administrator of Willig claims that he has not sufficient personal estate of his decedent to pay his debts, and that he is about to apply to the

orphans court of Gloucester county for leave to sell the premises in question for the payment of Willig's debts, and asserts the rights of Willig in the premises by virtue of a deed; alleged that the conveyance passed the title from Hildebrand and wife to Willig in fee, clear of any trust or condition or agreement that he should reconvey. The answer further sets up that the motive which prompted Hildebrand in making the conveyance to Willig was that Hildebrand was one of the stockholders of the Swedesboro Glass Works, a corporation of the State of New Jersey, and became an endorser upon the commercial paper of that corporation, and was fearing that he might become liable on such paper, and in order to place the premises beyond the reach of creditors he placed the title to the premises in Willig, with no arrangement for reconveyance to himself or the complainant Mary Hildebrand. The answer further denies that Hildebrand ever called upon Willig to reconvey, and sets up the fact that an action was begun in the Gloucester county court seeking to enforce the alleged contract of Willig to reconvey, which was dismissed. The answer further sets up that the case alleged by the bill shows the attempted creation of an express trust by parol, and prays that the defendant shall have the same benefit of the answer as if he had demurred to the bill.

Issues are joined on the allegations of the answer, and the case has come to a hearing on proofs submitted by each side.

*Messrs. Watkins & Avis,* for the complainants.

*Mr. Austin H. Swackhamer,* for the defendant George Bundens, administrator, &c.

GREY, V. C. (orally).

The complainants base their case substantially upon two points—*first,* that there never was any delivery whatever of this deed to Willig, or to anyone for him, by Hildebrand, the grantor, and *secondly,* that if there was a delivery, it was upon an express trust that Willig should reconvey to Mrs. Hildebrand, which was defeated by the accident that he died before it was carried into effect.

There is no question that there was such a deed executed, and its operation and effect, as appears on its face, would have been, upon delivery, to pass the title to Willig in fee-simple. There is very little denial of the mode in which the deed was executed, and substantially none as to the manner in which it came to be put upon record. In the point as to the actual delivery of the deed by Hildebrand to Willig, the evidence of an actual physical transaction of the deed from Mr. Hildebrand to Mr. Willig in the lifetime of the parties is somewhat obscure. It is, however, shown, by the weight of the evidence, that there was an agreement between Hildebrand and Willig that such a deed should be made, and that Willig had expressed to Hildebrand a willingness on his part to accept such a deed, and that, in accordance with that understanding between Willig and Hildebrand, the latter instructed Mr. Stratton to draw the deed and to have it recorded. It was drawn and executed under that agreement. Hildebrand instructed Stratton to get the deed back again after it was recorded, and when Stratton had obtained it from the clerk, after record, he sent it to Hildebrand. Willig, when spoken to by Stratton about the deed, said Hildebrand would attend to it.

On the question of the delivery of the deed, an actual physical passing of the paper is the usual mode observed in order to operate in law a delivery, but it is not necessary that there should be such an actual physical transmission of the deed. So, also, there may be situations where there is an actual passing of the paper which do not operate in law to effect a delivery. It is always a question, not of the actual thing done, but of the intent and mind of the acting parties in doing the thing. It may be that a man may be in an office, where he executes a deed, and he may walk out of the office and say nothing, leave the deed behind him, and a grantee may walk into the office and pick up the deed, and put it upon record, and the subsequent transactions may show that it was a *bona fide* conveyance, and that the delivery was effected at the time the grantee, by the assent of the parties, took the deed, because subsequent transactions may show that that was the intent of the parties. In such a case no word

was spoken, no act of delivery took place; the deed was simply left in one place by the grantor and picked up by the grantee. If subsequently he paid the consideration money, and received possession, it is perfectly obvious that it was the intent of the parties that the deed should be delivered. See the discussion of a delivery in *Terhune* v. *Oldis, 17 Stew. Eq. 150.*

What was the intent of Mr. Hildebrand and the intent of Mr. Willig in this transaction? The evidence satisfies me that Willig agreed that Hildebrand should make such a deed to him, and therefore the action upon the part of Hildebrand thereafter must be considered to have been with relation to the preceding agreement between him and Willig. Hildebrand not only executed such a deed, but, in addition to executing it and very well understanding what the deed would accomplish, he sent it to the clerk's office for record, and he thereby proclaimed to the world that he had made a deed to Henry Willig conveying the premises in question.

Mere registration of a deed, as the uninvited act of a scrivener, or even of a party to it, without the assent or agreement of the other party, ought not of itself to be held to be conclusive evidence of a delivery of it. But registration by agreement and instruction of the parties is forceful evidence of the delivery of the deed, for it is proclamation to the world that the conveyance has, in fact, been made.

All the circumstances of this case precedent to, attendant upon and subsequent to the act of registration show that it was done by the grantor, with the assent of the grantee, and that the grantor thereafter recognized the fact that the deed had passed title.

The bill of complaint itself recognized that the deed had, in fact, been delivered, for it narrates that, under the agreement with Willig, Hildebrand and wife "conveyed all the hereinbefore described premises unto said Willig in fee-simple." This could only have been done by delivery of the deed.

The next question is, for what purpose and intent was the deed made? Complainants insist that the title was passed to Willig under an agreement between Willig and Hildebrand, as

Hildebrand *v.* Willig.

follows: Mrs. Hildebrand owned one property, and Mr. Hildebrand owned that conveyed to Willig, which immediately adjoined Mrs. Hildebrand's tract. The complainants' claim is that the deed made to Willig was, by agreement between Hildebrand and Willig, made for the purpose of having Willig reconvey the premises now in dispute to Mrs. Hildebrand, in order that the two properties might be joined into one holding.

The defendants resist this claim, contending that it is an attempt to enforce an express trust, for the conveyance of lands, not evidenced by any writing. This is, I think, sufficiently answered by the reply that the statute of frauds will not be enforced in equity when the effect of its application will be to operate a fraud. If there was, in fact, such a parol trust, the performance of which was defeated by the accident that Willig died before performance, the aid of a court of equity might be asked, if not to compel the steps necessary to complete the gift in favor of a wife, then at least to restore to the representatives of the donor the property which had never been paid for.

It is therefore proper to examine the evidence to ascertain what, in fact, was the agreement between Hildebrand and Willig touching this conveyance, and whether there is any equity in the complainants entitling them to the relief they ask.

The evidence offered on the part of the complainants in support of this claim is wholly the proof of statements made by Mr. Hildebrand to his wife and daughter, here repeated by them. They are parties in the cause, testifying in their own interest. Mr. Stratton, the scrivener who drew the deed, is a witness. He received no declaration from Mr. Hildebrand that there was any such agreement. No instructions to prepare a deed from Willig to Mrs. Hildebrand appear to have been given. In the countryside, where this form of conveying the title of the husband's property to the wife is a common occurrence, it is almost invariably the custom to draw the two conveyances—from the husband to the third party, and from him to the wife—and to execute both deeds at the same time. The same officer usually prepares both deeds. It is remarkable, if there was a purpose that Willig should reconvey, that something of it was not mentioned by the grantor, intimating that it was intended that a

Hildebrand *v.* Willig.

second deed should be made. No disclosure of such a purpose appears in this case.

Another circumstance makes doubtful the claim that there was an agreement that Willig should reconvey. Hildebrand's deed to Willig was made on the 21st day of January, 1901. It is claimed that Willig's death prevented the completion of the plan of a reconveyance by him to Mrs. Hildebrand. Willig's death occurred in the month of September, 1901. During a period of eight months intervening between the making of the deed and Willig's death there is no proof whatever of any request, suggestion or claim that Willig should reconvey.

There is no explanation here given in evidence which satisfactorily shows that there was any definite agreement of any kind by which Willig obligated himself or agreed that he would reconvey to Mrs. Hildebrand. No other testimony is offered in support of that contention than the statements of Mrs. Hildebrand and her children, who are interested in supporting that claim.

In the view which I take of this case, however, I do not think the legal effect of the transaction would be affected whether there was an intent to reconvey the property to the wife or not. I am unable to avoid the force of the testimony of Mr. Millard F. Du Bois, narrating the explanation given to him by Mr. Hildebrand of the purpose and intent of this conveyance. After Mr. Willig's death, and when parties interested were applying to Mr. Du Bois, the surrogate, for letters of administration upon his estate, Mr. Hildebrand had the conversation with Mr. Du Bois regarding which the latter testifies. The conversation took place in September or October, 1901. At this time eight months had elapsed since Mr. Hildebrand conveyed the property to Mr. Willig. No steps had been taken to declare any trust in the property or to reconvey to Mrs. Hildebrand. In the meantime Willig had died. Hildebrand was Willig's father-in-law, and took an interest in the settlement of his estate. The relations between Hildebrand and Willig had been friendly. There was nothing improbable that there should have been an understanding between them that Willig should hold the premises for

17

the benefit or at the option and command of Hildebrand.   It was under these circumstances that Hildebrand explained the transaction to Mr. Du Bois, who was then surrogate of the county· of Gloucester.   Mr. Du Bois was asked to relate the conversation he had with Mr. Hildebrand.   He testified as follows:

"After I had granted the letters of administration to Mr. Bundens, Mr. Hildebrand said to me, 'Now, when will the administrator transfer back to me my property?' I said, 'What property?' I knew nothing of any property that he held. 'Well,' he said, 'My property.' I said, 'You will have to explain to me what your property is.' He said, 'I might as well tell you the whole thing, because you will have to know it.' He said, 'I went into the glass business at Swedesboro and I did not want to make any of my property liable for any misfortune that might happen to the firm, and I made it over to Henry Willig, my son-in-law,' and he said, 'Now I want it back.' I said I didn't see how he was going to get it back. The administrator had no authority to transfer his property back to him. The only way I see that it could be done is by an order of the court. I stated there were debts the son-in-law was bound for, and I didn't see any other way except to get an order of the court to sell lands to pay debts. 'Well,' he said. 'I am up against it then.' He said, 'It seems kind a hard that I have got to pay to get my property back.' I told him 'the administrator had no authority to transfer back any property.' "

This testimony is given by an intelligent and wholly disinterested witness.   It is entirely undisputed and unexplained. It is consistent with all the documentary proofs and with the actions of both Hildebrand and Willig with relation to this conveyance.   It explains Willig's remark to Stratton that Hildebrand would look after the matter, or words to that effect.   The action of Hildebrand in recording the deed and getting it returned to him, and his retention of possession of the premises, go to show that his statement to Mr. Du Bois is the true explanation of the transaction.

The weight and credibility of the evidence clearly support this view.   The result is a showing that Mr. Hildebrand made the deed in question when he was about to enter into a new business undertaking, which might involve him in financial misfortune. He did not want his property to be liable to be applied to satisfy such apprehended liabilities, and to avoid them he conveyed it to Willig.   Willig died still holding the title to it.   This bill is filed by Hildebrand's heirs-at-law to compel Willig's heirs-at-law to reconvey it.

The conveyance was made with the intent to hinder and defraud possible creditors of Mr. Hildebrand. It is within the operation of the statute of frauds, and this court will not give its aid to those who stand in the place of the wrong-doer to be relieved from the legal effect of such a conveyance.

It has been argued here that it does not appear that the apprehended financial misfortune did actually happen, and that there was, in fact, no actual hindering of Hildebrand's creditors. Conveyances made *with intent* to hinder and defraud creditors are declared to be void by the statute whether they succeed in defrauding or not.

Courts of equity will not entertain propositions of this character. They say to all persons who desire to make conveyances with intent to defraud either present or possible future creditors: "You make such conveyances at your own risk; you cannot induce the courts to relieve you from the consequences of your fraudulent acts. It is no ground for relief that, although you intend to cheat creditors if occasion should require, the expected occasion did not happen, and your preparation to defraud creditors was therefore unnecessary."

The bill of complaint must be dismissed, with costs.