"He who doth fraud may not borrow the hands of the Chancellor to draw equity from a fountain his own hath polluted." It is a maxim of equity that he who comes into a court of equity must enter with clean hands, and in the ordinary application of that maxim a court of equity denies its remedies to a complainant who has been guilty of bad faith, fraud or unconscionable acts in the transaction which constitutes the basis of his suit. Baldwin v.Campfield, 8 N.J. Eq. 891; Servis v. Nelson, 14 N.J. Eq. 94;Cutler v. Tuttle, 19 N.J. Eq. 549; Eyre v. Eyre, 19 N.J. Eq. 42; *Page 356 Johns v. Norris, 22 N.J. Eq. 102; Watson v. Murray, 23 N.J. Eq. 257; Ruckman v. Conover, 37 N.J. Eq. 583; Ellicott v.Chamberlin, 38 N.J. Eq. 604; Winans v. Graves, 43 N.J. Eq. 263; 11 Atl. Rep. 25; Doughty v. Miller, 50 N.J. Eq. 529;25 Atl. Rep. 153; Brooks v. Cooper, 50 N.J. Eq. 761;26 Atl. Rep. 978; Schwalber v. Ehman, 62 N.J. Eq. 314; 49 Atl. Rep. 1085;Hildebrand v. Willig, 64 N.J. Eq. 249; 53 Atl. Rep. 1035;Pendleton v. Gondolf, 85 N.J. Eq. 308, 315; 96 Atl. Rep. 47;Sayre v. Lemberger, 92 N.J. Eq. 656; 114 Atl. Rep. 454;Semenowich v. Melnyk, 93 N.J. Eq. 615; 117 Atl. Rep. 832;Gluck v. Rynda Development Co., 99 N.J. Eq. 788, 802;134 Atl. Rep. 363; affirmed, 100 N.J. Eq. 554; 135 Atl. Rep. 917; BankersTrust Co. v. Bank of Rockville, c., 114 N.J. Eq. 391, 398;168 Atl. Rep. 733; 2 Lawrence, Equity Jur., §§ 690, 1086; 2 Black onRescission and Cancellation 870 § 323; 2 Pom. Eq. Jur. (5thed.) 108 § 401a.
The complainants prosecute this cause to have restored to them the legal title to a residential property in the Town of Raritan, in the County of Somerset. The litigation is the offspring of a family quarrel. However intense may be the desire to pacify the belligerent members of the family and their confederates by some abatement of their differences, it is undeniable that the allowance of the relief now requested by the complainants would not only transgress the principle of equity jurisprudence to which I have referred, but would also thwart the public policy which has been uniformly observed in such cases. Salus populisuprema lex.
He who attempts to cheat others, by a fraudulent transfer of his property, will not be heard to complain if in the endeavor he is cheated himself. There is a rugged but wholesome justice in compelling him to take what he has tried to give.
The plight from which the complainants now seek to be emancipated is the sequel of their strategy of 1927. The complainant Irvin Blaine had obligated himself to participate with his brother in defraying the expense of the maintenance of their invalid mother and the eventual cost of her burial. It was in 1927 that a claim in that regard was being *Page 357 
urgently asserted against the complainant Irvin Blaine by his brother, which he was either disinclined or unable to pay and which he apprehended he might be compelled to pay. The complainants on December 12th, 1927, voluntarily conveyed by a deed absolute and unconditional in its terms their only property to the defendant Theresa Bearlepp, a sister of Mrs. Blaine.
I cannot elude the conviction that the conveyance was deliberately made by the complainants for the sole purpose of defeating the collection of the debt. Mrs. Blaine was also cognizant of the purpose sought to be effectuated by the conveyance. The will executed by Theresa Bearlepp on December 14th, 1927, was incidentally a constituent of the scheme. I can discover no exoneration for the significant fact that in the bill of complaint initially filed in this cause on January 7th, 1944, the complainants alleged, and in the accompanying affidavits deposed under oath, that such was the purpose of the conveyance. True, in an amended bill filed on March 27th, 1944, after a presentation of the circumstances of the controversy at the argument of an order to show cause, a new reason for the conveyance was alleged, to which this court would ordinarily be more hospitable.
The same equitable maxim to which I have alluded obliges a litigant who seeks affirmative aid in this court to frankly and unevasively yield to the Chancellor that full measure of confidence and truth which is prerequisite to the assertion and exercise of Chancery powers.
An inquiry at the final hearing concerning the circumstances surrounding the execution of the deed revealed beyond doubt the existence of the claim against Mr. Blaine, the impelling insistence of the brother that the complainant should pay his share, the eventual institution of an action against that complainant and the recovery of a judgment. It is my conclusion that the complainants' explanation of the reason motivating the execution of the deed was truly related by them in the original verified bill.
It is now declared that the judgment was satisfied in 1943, sixteen years after the execution of the deed, and that the collection of the debt has not been defeated. In Semenowich *Page 358 
v. Melnyk, supra, Mr. Justice Swayze aptly remarked (at p.620): "The rights of fraud-doers are not looked at in the light of the wrong they accomplish but of the wrong they plan." See, also, Hildebrand v. Willig, supra; Pillsbury v. Kingon,33 N.J. Eq. 287; 24 Am. Jur. tit. "Fraudulent Conveyances" § 116;148 A.L.R. 231.
The complainants are presumed to have known that a trust, not manifested in writing, could not be implied in their favor.Down v. Down, 80 N.J. Eq. 68; 82 Atl. Rep. 322. A constructive trust must be evidenced by some more influential circumstance than a mere breach of an oral promise to reconvey or to hold in trust. Brown v. Murray, 94 N.J. Eq. 125;118 Atl. Rep. 534. The deed recites that the conveyance was made for a good and valuable consideration. Geller v. Johnson, 95 N.J. Eq. 516; 123 Atl. Rep. 725.
A decree will be advised dismissing the bill.