THOMAS GALWAY, PHELIPE W. CASADO, and DANIEL W. TELLER, partners, *vs.* ALMIRA V. N. FULLERTON, ALFRED B. FULLERTON, and others.

1. Equity will not, by the application of strict technical rules of law, declare void, contracts which have been fairly entered into, and where the ends of justice would be thereby defeated.

2 K *

2. A mortgage, given by a member of a firm to the firm, is valid; it is in no sense a mortgage to himself.

3. A husband is not a competent witness in a suit, in the event of which his wife has a direct interest.

4. A mortgage, given by a married woman, upon her separate estate, acknowledged in conformity with the statute, and joined in by the husband, is a valid security, and will be enforced, both at law and in equity.

5. A bond and mortgage is a *chose in action*, and as such may be assigned by mere delivery, and without writing, and the assignment, in equity, would be good.

6. It is not necessary to the validity of an assignment of a mortgage by a firm, to secure a partnership debt, that it should be executed by all the members of the firm, though they were all joined by name, as mortgagees.

---

This cause was argued before Jacob Weart, esq., one of the masters of the court, who was called by the Chancellor to advise with him upon the hearing of the same.

*Mr. A. S. Boyd* and *Mr. Ransom,* for complainants.

*Mr. C. Parker,* for defendants, Fullerton and wife.

THE MASTER. The bill in this case was filed to foreclose a mortgage. The case comes before the court upon bill, answer, replication, and proofs. Prior to the eleventh day of March, eighteen hundred and sixty-four, the defendant, Alfred R. Fullerton, was in co-partnership with Orville Oddie and Christopher R. St. George, doing business under the name, style, and firm, of Oddie, St. George & Co., in the city of New York, as brokers.

It appears that the defendant, Fullerton, without the knowledge or consent of his partners, used for his own purposes, the money of the firm, to the amount of $31,500, which was lost. It also further appears that on his private account he had drawn $20,000 in advance of his partners; making his drafts upon the firm in excess of his partners, to the amount of about $50,000. But the whole controversy in this suit is about the draft of $31,500. When this was

discovered by the other partners, Oddie and St. George, they insisted that Fullerton should secure the amount. This Fullerton agreed to do, and accordingly, on the 19th day of March, 1864, he, with his wife, Almira V. N. Fullerton, executed a bond, and secured the same by a mortgage on his wife's separate estate for $20,000, the mortgage being executed to "Orville Oddie, Christopher R. St. George, and Alfred R. Fullerton, doing business in the city of New York, under the name and firm of Oddie, St. George & Co.;" and the said Fullerton gave his own note to the firm for $10,000 more.

The firm held this mortgage, and being indebted unto the complainants in a sum exceeding $20,000, did, on the 19th of July, 1864, assign said bond and mortgage to them, as a security for the payment of the firm debt. The assignment was made in this form: " We, Orville Oddie and Christopher R. St. George, of the city of New York, bankers and brokers, general partners of the firm of Oddie, St. George & Company;" the defendant, Fullerton, not joining in the assignment. It is proved that the firm of Oddie, St. George & Co., still owe the complainants over $20,000, and that no part of the debt for which this mortgage was assigned has been paid.

The defendant, Fullerton, insists that the bond by a man to himself is void *ab initio*. It constitutes no debt. A man cannot owe himself. He insists, likewise, that the mortgage of a married woman, to secure her husband's debt to himself and two others, ought not to be enforced in equity. Married women should be protected from their husbands. That was the intent and policy of the act respecting the property of married women.

The defendant further insists that the assignment is void. A mortgage to three, requires assignment by three. The obvious intent of so making it, was to restrict its transfer.

In relation to the *bona fides* of this transaction, I have no doubt that it was the intention of Fullerton and wife to pledge the wife's private estate to the firm, for the purpose

of securing the secret over-draft of her husband upon the firm of which he was a member; and that the security thus held by the firm of Oddie, St. George & Co., was assigned by them to secure a debt due to the complainants from said firm, there can be no doubt. Under such circumstances it is the duty of a court of equity to compel the fulfillment of the contracts thus made, if it can be done at all, with any consistency, by the application of equitable principles and rules. And it will not declare as void, contracts which have been fairly entered into, and which will defeat the ends of justice by the application of strict technical rules of law.

Was this bond and mortgage made by an individual to himself, and therefore void? I think not, in any sense of the term. It was a bond and mortgage from Fullerton and wife, to the firm of Oddie, St. George & Co., and the individual members of the firm being mentioned in the mortgage, that of Fullerton necessarily appeared as one of the members of the firm. If it was the execution of a mortgage by a man to himself, it would be, after execution, necessarily his individual property; but was this mortgage, after execution and delivery, the individual property of Fullerton? Certainly not. It belonged to the firm, and became one of the assets of the firm; it was liable for the firm debts, and not liable for the individual debts of the members of the firm, until all the firm debts were paid.

Again: it is every day's transaction for individuals to give mortgages and other securities to corporations of which they are corporators and directors. But it may be said that this can be done, as a corporation is an artificial person. So is a firm. A corporation acts by its common seal; a firm, by its firm name and title.

I look upon this transaction as Almira V. N. Fullerton's coming forward to pledge her separate estate to secure the firm of Oddie, St. George & Co., against loss from the over-draft of her husband. Suppose she could have executed, without her husband's joining, this mortgage to the firm of which he was a member; could it be questioned in any way,

except as a contract between husband and wife? and is it in reality such a contract, when it is made to three individuals composing a firm, even if one of the individuals should happen to be her husband?

The husband, in this case, joins, not as mortgagor in reality, but for the purpose of assenting to the wife's execution of the mortgage, as it would be void without such assent. Treating it in that light, the husband joined to give effect to the contract of the wife, and the mortgage being to the firm, in the recital of the names of the individual members composing the firm, that of Fullerton necessarily appears. Therefore, if it is the mortgage of the wife to the firm, and the husband joins to give validity to the contract, is it in any sense, a mortgage from a man to himself?

Again: it was said upon the argument that equity will strike out the name, and allow the mortgage to stand for the purpose and intent for which it was executed; or that equity would treat the three partners as holding the security in trust for the two; but I incline to base my opinions upon the view expressed above.

Numerous cases were cited on the argument, to show that individuals composing a firm, could deal with the firm. In the case of *Baring et al.* v. *Lyman*, 1 *Story's R.* 423, Story, J., says: "A firm may negotiate its own paper to one partner, and the latter will thereby become the owner thereof; and on the other hand, a firm may take a separate negotiable security from one of its partners, and hold and use the same for its own purposes." In the case of *Gridley* v. *Dole*, 4 *Comstock's R.* 492, it was held that, "if one partner gives the other his promissory note, or separate acceptance, for value received, in the partnership account, an action will lie on such note or bill."

Fullerton, the defendant, was examined in this cause, but his wife having a direct interest in the event of the suit, his testimony upon grounds of public policy, must be considered as out of the case. *Bird* v. *Davis*, 1 *McCarter* 478; *Staats* v. *Bergen, ante, p.* 297.

The objection that the wife's property must be protected in equity from the debts of her husband, is answered by saying that it is so protected, until she does, by her voluntary act, free from the threats or compulsion of her husband, make it so liable, by the execution of a deed or mortgage; and when she executes a mortgage, and acknowledges it in conformity with the statute, and the husband consents to the execution by joining in the mortgage, it becomes a valid security, and will be enforced both at law and in equity.

Treating this bond and mortgage after its execution and delivery to the firm, as a good and valid security, in the possession of the firm, and as belonging to the firm assets, we come to the question; can two members of a firm assign the firm assets in payment of, or as collateral for the payment of a firm debt?

A bond and mortgage is a *chose in action*, and as such, may be assigned by mere delivery, and without writing, which assignment in equity would be good. *Wilson* v. *Troup*, 2 *Cowen's R.* 231; *Jackson* v. *Willard*, 4 *Johns. R.* 41; *Prescott* v. *Hull*, 17 *Johns. R.* 292; 1 *Parson on Con.* 197, and numerous cases there cited.

Treating this bond and mortgage as a *chose in action* belonging to the firm, any member could have assigned it by mere delivery to the complainants in payment of their debt, and equity would hold the assignment good; that being the case, the signature of Fullerton was not necessary to the assignment, it was perfectly good without the written assignment under the hands and seals of the two partners, which accompanied the bond and mortgage.

The right of one member of the firm to deal with and dispose of the *choses in action* of the firm, is too well settled to need the citation of authority. In the case of *Everit* v. *Strong*, 5 *Hill's R.* 163, Cowen, J., says: "No doubt one of several partners has power to assign a demand due to the firm. He has power to sell any of the effects belonging to the partnership. He may negotiate its paper by endorsement or otherwise. The same principle which gives him such authority,

extends it to the equitable assignment of a *chose in action.* That a partner superadds a seal to an assignment will not vitiate it, any more than it would a sale of goods made by him under his hand and seal." In the case of *Tapley* v. *Butterfield,* 1 *Metc. R.* 515, Shaw, C. J., says, it is within the scope of the partnership authority to pay the debts of the firm, and to apply the assets of the firm for that purpose, and that a mortgage made by one partner in the absence of the other, although unnecessarily made by deed, was binding upon the property, and constituted a valid lien.

I am of the opinion that the assignment of the mortgage in this case, by two members of the firm, is a good and valid assignment in equity.

My conclusion is that the complainants are entitled to the relief prayed for, and I advise the Chancellor that a decree be entered accordingly, and that it be referred to one of the masters of the court, to take an account of the amount due on the complainants' mortgage, and of the amount due on the mortgage of the defendant, William R. Allen, and as to the priority of said mortgages.