MINNA SCHWALBER

*v.*

REGINA EHMAN and CHRISTOPHER EHMAN, her husband.

[Filed August 2d, 1901.]

</div>

1. A gift in fraud of a pursuing creditor is good as between the donor and the donee.

2. Such a fraudulent gift is good against the administrator of a deceased donor, except to the extent necessary to pay the debts of the decedent.

3. A relation *par amour*, carries no presumption of the exertion of an undue influence by the mistress. It does call for suspicious scrutiny of the conduct of the parties, in ascertaining whether the challenged act of the man was induced to be done by an undue interference with his free action.

4. The court of chancery has no jurisdiction to pass upon a legal demand for unliquidated damages.

On bill, answer and proofs.

The complainant is the widow of Charles J. Schwalber, deceased. She files her bill of complaint, as his administratrix, against the defendant Regina Ehman, alleging that the latter was the paramour of the decedent in his lifetime and at the time of his death; that Schwalber advanced the purchase-money of a house at Riverside, New Jersey, for one John Brand, and because of the undue influence of Regina, and to conceal his property from his wife, who was proceeding for alimony, he took a mortgage for $550 on the house and lot of Brand, in the name of Regina as mortgagee, but himself retained the custody and possession of it till his death.

The complainant insists that the mortgage having been made to secure moneys advanced by the decedent, the making of it to Regina created a resulting trust in favor of the decedent, and Regina held the same only as his agent and trustee. The complainant further charges that, after the decedent's death, Regina took possession of the bond and mortgage, and by surrendering them obtained a conveyance of the mortgaged premises to be made to herself; that, by undue influence, Regina induced the decedent to take a mortgage in her name for $135 for moneys loaned by him to one Joseph Voghte; that the decedent held this bond and mortgage up to and at the time of his death, but after that Regina took possession of it and has since received the interest on it. The complainant also charges that Regina, who was living with the decedent, at Riverside, at the time of his death, removed and appropriated to her own use a large quantity of decedent's house furniture and other personal property, a detailed inventory of which is set forth in the bill, to the value of at least $2,000. Regina has since married one Christopher

Ehman, who is made a defendant for that reason. The complainant charges that, after the decedent's death, Regina offered for probate, in Philadelphia, a paper purporting to be his will, which the register refused to admit to probate, because it was procured by the undue influence and fraud of Regina, and that, on appeal to the court of common pleas, the register's decree was affirmed. The prayer of the bill is for discovery, by answer to specific interrogatories set forth in the bill; for a decree for a conveyance to complainant of the house and lot, title to which was obtained by Regina by surrender of the Brand mortgage, or that the property may be charged with the $550 and interest in favor of the complainant, and be sold to satisfy that sum; that Regina may assign the Voghte mortgage to the complainant, and pay such of the interest on that mortgage as she has collected, and may account for moneys, goods and personal property taken by her from decedent's premises since his death, and for other relief.

The defendant denies that she was Schwalber's paramour, and that she exercised any undue influence over him. She admits that she tendered a paper purporting to be his last will for probate, and says that it was, in fact, his last will. She admits it was refused probate by the register, and that, on appeal, his decision was affirmed, but she says the affirming decree was rendered by her consent and upon an agreement between the complainant and herself that she should be paid $3,000 out of Schwalber's estate, which she avers was a full settlement of all claims of Schwalber's estate against her. She denies the complainant's charges as to the Brand mortgage, and avers that the money secured by that mortgage was her own money—a portion of her earnings—and that the bond and mortgage were hers, and always remained in her custody as her own, and not as trustee for Schwalber. She admits that it was surrendered in consideration of the conveyance of the mortgaged premises to herself, but insists that the mortgage was held by her, and the house and lot conveyed to her, as her sole property, owned by her in her own right, and not as trustee for Schwalber. She denies that she, by undue influence, obtained Schwalber to take in her name the Voghte mortgage for $135 for moneys loaned by him, and that

Schwalber held it up to the time of his death, and that she took it after Schwalber's death; on the contrary, she says those mortgage-moneys were her own, the mortgage was rightfully made to her to secure them, and she held and possessed it as her own property from the time when it was given, while Schwalber was alive, and that she has since collected it. She admits that Schwalber's house, at the time of his death, was well supplied with household goods, but she denies that all of those goods belonged to Schwalber, and alleges that a large part of them belonged to herself. She admits that during the three months after Schwalber's death, while the will contest was pending, she was in possession of the house, but she denies that she removed any of Schwalber's goods, and also that she took any of his money or securities.

*Mr. Charles E. Hendrickson,* for the complainant.

*Messrs. Gilbert & Atkinson,* for the defendants.

Grey, V. C.

The complainant is the administratrix of Charles Schwalber, deceased. She files her bill, as administratrix, against the defendant for relief as to three separate incidents:

*First.* That the Brand mortgage may be reinstated in favor of the complainant, or that the defendant may be decreed to convey to complainant the house and lot obtained by its surrender.

*Second.* That the defendant may assign the Voghte mortgage to the complainant and pay the interest she has collected thereon.

*Third.* That she may account for personal property which the complainant insists she removed from Schwalber's house after his death.

There is no proof that, in any sufficient way, supports the charge that the Voghte mortgage-money belonged to the decedent, Schwalber. The complainant's counsel himself conceded his failure on this branch of the case, and on the argument frankly abandoned the claim to the Voghte mortgage.

The complainant's attack upon the defendant's holding of the Brand mortgage, and the lot which she purchased by its use, is pressed with vigor upon two grounds—*first,* that Schwalber put

his money into the Brand mortgage in the name of the defendant as mortgagee, in order to prevent his wife from collecting her alimony from him; *second*, that Schwalber was living *par amour* with the defendant, who, by the exertion of an undue influence, induced him to put $550 of his own money in her name as mortgagee; that he did not give her the mortgage in his lifetime, but that after his death she took it from among his papers.

The first ground of attack, alleging that Schwalber had put his money in the mortgage in the defendant's name as mortgagee, in order to prevent Mrs. Schwalber from collecting her alimony, is not unsustained by the proofs, but, as matter of law, must be held to be ineffectual. It is perfectly well settled that a fraudulent transfer, intended to hinder the payment of debts, is binding upon the debtor who, in fraud of his creditors, makes the transfer. *Marlatt* v. *Warwick and Smith, 4 C. E. Gr. 439 (Court of Appeals)*. The complainant files her bill as administratrix of Schwalber, setting up his supposed fraud. As an administrator takes only the property whereof the decedent died possessed, his fraudulent transfer in his lifetime is good as against his administrator, unless it be alleged and proven that there is not enough estate of the decedent to pay his debts. In that case an administrator, asserting the rights of the decedent's creditors, may, to the extent necessary to pay them, recover the fraudulently disposed of assets. There can be no such recovery for the benefit of distributees, who are mere volunteers. Neither the bill nor the evidence in this case exhibits the necessary conditions for such a recovery.

The second ground, that Schwalber was induced to put the Brand mortgage in defendant's name by undue influence, is based upon the fact that Schwalber lived *par amour* with the defendant. That the defendant did so live with Schwalber is fully proven. The complainant assumes that this fact is presumptive evidence of the exertion by the defendant of an undue influence over him in the obtaining of the Brand mortgage. But this is not the law. Such an immoral relation, however reprehensible it may be, carries no presumption of the exertion of an undue influence overcoming the will of the decedent. It does call for

and justify a close and suspicious scrutiny of the acts of the parties in making the inquiry whether the challenged act was done by the free choice of the decedent. *Arnault* v. *Arnault, 7 Dick. Ch. Rep. 805,* and the cases there cited. No proof is directed to the showing of any influence, undue or otherwise, exerted for the purpose of inducing Schwalber to put his money in the Brand mortgage in the name of the defendant. The indications of the evidence convey the impression that Schwalber was a man not easily turned from his own individual purposes. The testimony directed to this phase of the case was of the most general character, and does not establish the complainant's claim, even if it be assumed that the money loaned in the Brand mortgage belonged, in fact, to Schwalber.

All the lines of attack upon the *bona fides* of the defendant's holding and use of the Brand mortgage are dependent upon the basic fact, which the complainant asserts and undertakes to prove, namely, that the money put into that mortgage belonged, in truth, to Schwalber.

The proofs show that Schwalber, for some years before the mortgage was made, had been separated from his wife; that she was suing him for alimony, and that he lived *par amour* with the defendant. They also show that Schwalber was a man of considerable force; that he was treasurer of several associations, and, judging from the sidelights cast by the statements of the witnesses, was in no sense an easily-controlled weakling, however disreputable his conduct may have been. For a long time before the making of the Brand mortgage the defendant had been employed by Schwalber as a servant at $5 per week. The greater part of her wages was left in Schwalber's hands. The first step towards the creation of the mortgage was the application of Mrs. Brand, the wife of the mortgagor, to the defendant, requesting her to loan the amount of the mortgage. Shortly after this application the loan was made, the defendant's name appearing as mortgagee. Schwalber must have been consulted by the defendant, for he told the scrivener that he had advised the defendant to help Brand. Schwalber also directed the business attending upon the execution of the mortgage and the delivery of the money to the mortgagor. He instructed the scrivener

how to draw the mortgage which named the defendant as mortgagee, telling him that the defendant had some money in bank, and that he (Schwalber) had requested her to help Brand, the mortgagor. The latter testifies that he paid the interest on the mortgage, sometimes to Schwalber and sometimes to the defendant. Mrs. Brand testifies that Schwalber told her that the mortgage-money belonged to the defendant. Schwalber is shown to have made several other statements, in the nature of admissions, to the same effect. The mortgage itself was, by his express direction, made in the defendant's name as mortgagee. The defendant swears she loaned the money to Brand, and that it was her own money. Taking all the proofs into consideration, though they are somewhat contradictory, the weight of the evidence leads to the belief that the mortgage-money loaned to Brand did, in fact, belong to the defendant. At the time of the making of the loan, the cash was delivered to the mortgagor by Schwalber, but it was so delivered by him for the defendant. This view necessarily refutes the claim that the Brand mortgage transaction operated to create a resulting trust in favor of Schwalber in that mortgage. There cannot have been either a taking of the mortgage in fraud of Schwalber's creditors or undue influence in obtaining it, or a wrongful seizure of it after Schwalber's death, when the mortgage-money is found to have belonged to the mortgagee named in it, who is accused of these various misdoings in obtaining it. The evidence offered in support of these charges is largely inferential, and does not carry enough weight to overcome the more direct proof offered in support of the *bona fide* ownership of the mortgage by the defendant.

The remaining question is the claim of the complainant for an accounting, based upon the allegation that, after Schwalber's death, the defendant removed a large quantity of household goods and other personal property and appropriated it to her own use. After issue joined by way of answer, denying this charge, and after the cause had come to hearing, but before the opening of the testimony, the defendant asked leave to amend her answer, so that she might have the benefit of a demurrer to this claim. The request was refused, for the reason that the

Schwalber v. Ehman.

cause being then about to be heard the vice-chancellor was of opinion that the complainant was entitled to a hearing on the issues joined on the matters of fact, so that if a case which could be entertained in this court were disclosed, she might, by amendment of her bill, if need be, have an opportunity to show her right to a decree. After the testimony was in the defendant's counsel, as part of his argument in the cause, again insisted that conceding, for the argument's sake, that the goods, &c., were wrongfully taken by the defendant, still there is no remedy in this court, because it has no jurisdiction to decree an accounting for the unliquidated damages recoverable for such a taking of personal property.

The whole claim touching the alleged taking of household goods and other personal property sounds in damages, whether considered as a tort or as a suit on contract to recover value. There is no pretence that there was any contract or agreement fixing the price or value of the things taken. The recovery must be upon the same basis as in an action of trover and conversion, in damages for such sum as will compensate the complainant for the loss of her property. Such an action could undoubtedly have been brought for such an injury as the complainant exhibits in her bill. This is necessarily an unliquidated sum. It has been declared by the court of appeals that this court has no jurisdiction to pass upon a purely legal demand for unliquidated damages. *Alpaugh* v. *Wood, 18 Stew. Eq. 157.* In that case the question of jurisdiction was first raised in the court of appeals, after decree in this court, upon a matter of accounting, the appellants insisting that they had a right to a jury trial to settle the controversy. The court of appeals declared that "in this contention the appellants are clearly in the right." The defendant in this cause may therefore rightfully challenge the power of this court to take further cognizance of that phase of this case which asks an accounting for the alleged wrongful taking of the decedent's household goods, &c., by the defendant. The remedy for such wrongs lies in the law courts.

There should be a decree dismissing the complainant's bill, with costs.