THE LEMBECK AND BETZ EAGLE BREWING COMPANY

*v.*

ANNIE KELLY and EDWARD W. BURGER, executors of the last will and testament of Simon Kelly.

[Submitted December 9th, 1901. Decided March 27th, 1902. Filed September 8th, 1902.]

1. The question whether the mortgage of a leasehold is violative of a covenant in a lease against assignments, so as to work a forfeiture of the leasehold, is rendered immaterial, in proceedings to foreclose the mortgage, by a foreclosure sale; the risk of the question being taken by the purchaser, and the contest thereafter concerning merely the proceeds of the sale.

Lembeck & Betz Eagle Brewing Co. v. Kelly.

2. Executors of a deceased mortgagor of a leasehold may, on foreclosure, interpose, in behalf of creditors whose claims accrued before the recording of the mortgage, the defence that the mortgage was void as against such creditors by reason of failure to immediately record it, and want of change of possession.

3. *P. L. of 1898 p. 670*, revising the act concerning conveyances, authorizes (section .21) two classes of instruments to be recorded—*first*, those affecting title to land, including leaseholds for not less than two years, and *second*, those affecting chattels. Section 41 provides for the registry of leases of lands in one book, assignments of leases by way of mortgage in another book, entitled "Mortgages," and of chattel mortgages in a third book. Section 53 concerns instruments which "shall have been" or shall be duly executed, &c. Section 54 avoids unrecorded instruments as to subsequent judgment creditors, &c.—*Held*, that the mortgage of a ten-year leasehold was within the purview of the act, though executed a year prior to its passage, and was properly recorded as a mortgage affecting real estate, so as to be effective against creditors of the mortgagor whose claims accrued between its execution and recording.

4. A mortgage of a ten-year leasehold is an instrument which "conveys" an interest in land, so as to be within the purview of the title of an act entitled "An act respecting conveyances" (*P. L. of 1898 p. 670*), and is properly recorded, under section 21, dividing instruments capable of record into two classes, the first of which includes those affecting title to land and leases for not less than two years, as a mortgage of realty; and it is not necessary, to make such a mortgage good against creditors, that it be recorded in conformity to *P. L. of 1885 p. 318 (Gen. Stat. pp. 2113, 2114)*, governing the recording of chattel mortgages.

On final hearing on bill, answer and proofs.

The complainant, the Lembeck and Betz Eagle Brewing Company, files its bill against the defendants to foreclose a mortgage given to it by Simon Kelly, deceased. The mortgage is dated September 1st, 1896, and was given to secure the sum of $10,000 on the 1st day of March, 1897, with interest payable semi-annually. The instrument was duly acknowledged by Kelly in April, 1897, and recorded as a mortgage of real estate on March 1st, 1900, three and one-half years after its date, and nearly three years after its acknowledgment.

Kelly died May 31st, 1900, leaving a last will and testament, of which the defendants are the executors.

The estate of Kelly is hopelessly insolvent.

The subject-matter of the mortgage is a leasehold estate in certain lands in the county of Hudson, which estate was vested

in Kelly by virtue of an indenture of lease dated August 26th, 1895, made by the West Shore Railroad Company and the New York Central Railroad Company to said Kelly.

By that indenture the lessors "granted, demised and farm let" to Kelly certain lands, particularly described, to have and to hold the same unto the said Kelly, his executors, administrators and assigns, from the 1st day of September, 1895, for and during and until the end of the term of ten years next ensuing, reserving a rent of $120 a year, which rent Kelly agreed to pay, besides

"all taxes, assessments and payments extraordinary as well as ordinary, which shall, during the term hereby granted and during any renewal thereof, be imposed or grow due and become payable out of or for the said demised premises, or any part thereof."

There is also a clause restricting the assignment of the lease; also one against maintaining any nuisance on the premises.

The indenture also contained a covenant, on the part of Kelly, within two years from the commencement of the term, to

"erect and build, or cause to be erected and built, on the premises hereby demised a good and substantial building for hotel purposes, at least two stories high, upon plans to be approved by the lessors."

There is a further clause providing that if Kelly should build such a hotel and otherwise perform his covenants, then the lessors, their successors and assigns, shall, and will, at the end and expiration of the term hereby demised, grant and execute unto Kelly, his executors, administrators or assigns, a renewal of the lease for the further term of twenty-one years, at a rent to be fixed by agreement or arbitration.

It was further agreed that

"if the lessors, at the expiration of the term of ten years, or at the expiration of any term that may be granted thereafter by any subsequent renewal, elect and choose to pay unto the party of the second part, his executors, administrators or assigns, the value of the said hotel building, to be ascertained by arbitration, and shall actually make such payment or tender the same, then the said Kelly, his executors, administrators or assigns shall deliver up the said hotel building in the same order and condition in which it was at the time of its valuation, and all and singular

the other premises hereby demised, into the hands and possession of the parties of the first part, their successors and assigns, without fraud or delay."

This indenture was duly acknowledged and recorded in the clerk's office of Hudson county on October 4th, 1895.

The mortgage recites the demise and description of the land contained in the indenture, and also an indebtedness from Kelly to the complainant, and then proceeds "to grant, bargain, sell, assign, transfer and set over unto" the complainant the lease, "with the buildings and improvements thereon erected, together with the appurtenances, and all the estate and rights of the parties of the first part," to have and to hold, &c. Then follows the usual condition found in mortgages of real estate.

Kelly took possession and erected the building in accordance with his covenant, and occupied it until his death. The defendants took possession, as his executors, and occupied the premises at the filing of the bill.

The defence set up in the answer and disclosed by the proofs is twofold—first, that the mortgage from Kelly to the complainant was a breach of that clause in the lease which forbids an assignment, and hence destroyed at once the term.

The second defence relied on was that the complainant's mortgage is no more and no less than a mortgage of chattels, and hence, as it was not immediately recorded, and there was no change of possession, and it lacked the affidavit required to a chattel mortgage, it was void against creditors who became such before it was actually recorded, and that Kelly died hopelessly insolvent and owing large sums of money, most of which indebtedness was incurred prior to the recording of the mortgage, and that the executors, in the interest of the creditors, set up that defence.

By an interlocutory order made in the cause the leasehold' interest, with the buildings and fixtures, was sold by a master, and the contest is now over the proceeds of the sale.

*Mr. John Griffin, Mr. Robert S. Hudspeth* and *Mr. Henry Puster,* for the complainant.

*Mr. Maximilian T. Rosenberg,* for the defendants.

Lembeck & Betz Eagle Brewing Co. *v.* Kelly.

PITNEY, V. C.

The position taken by the defendants, that they represent the .creditors, and are entitled to set up any defence against the -mortgage that creditors who became such before the recording .of the mortgage could set up, is well established. *Currie* v. *Knight, 7 Stew. Eq. 485.*

If the mortgage would be void against creditors of Kelly if .attacked by them in his lifetime, it must be held void as against his executors, to the extent, at least, that it will satisfy the .creditors.

The point taken that the assignment of the lease by way of mortgage was a breach of the covenant which at once terminated the term, is rendered immaterial·by the sale of the mortgaged premises. The purchaser at the sale took the risk of that question. The contest here is over the proceeds of the sale.

The principal question is as to the character of the complainant's mortgage and the effect of its record at the time and in the manner disclosed by the case—that is, as a mortgage of real estate, and not as a mortgage of chattels. The complainant .contends that it was properly so recorded, and took effect from the date of the mortgage as against all creditors.

The complainant relies on the act of April 4th, 1872. *P., L. .of 1872 p. 93.; Rev. of 1877 p. 157; Gen. Stat. p. 857.* The title of the act is "A further supplement to an act entitled 'An .act respecting conveyances.'" The language of the act, modified by the revision of 1877, is this:.

"SEC. 19. That all leases for estates in lands and tenements for life, or for a term not less than two years, being duly signed, sealed and acknowledged or proved, in the manner herein prescribed for the acknowl-.edgment or proof of deeds of conveyance, may be recorded in the same manner as such deeds may be recorded; and such record shall be notice to ·subsequent judgment creditors, purchasers, lessees and mortgagees."

Section 20 provides

·"that the estate of any such lessee in the demised premises, the .lease -whereof shall have been recorded in manner aforesaid, shall be liable to sale under a .judgment or decree, in like manner, only as estates of free-:hold are now liable to be sold thereunder."

Section 21 provides

"that any assignment of such lease so recorded, such assignment being. signed, sealed, acknowledged or proved in manner aforesaid, may be recorded in like manner; and the record thereof shall have the same force and effect as the record of the original lease."

That is, it shall be notice to subsequent judgment creditors.

Section 22 provides

"that the assignment of such leases and leasehold interest by way of mortgage and as security for moneys loaned, shall be valid; and the same being duly signed, sealed and acknowledged in manner aforesaid, may be recorded or registered in like manner as mortgages of the freehold now are, and the record or registry thereof shall have the same force and effect."

It is important to observe that sections 19 to 22, inclusive, above recited, contain no penalty for non-recording, unless it may be inferred from the closing words of section 22.

Complainant further relies upon the act of April 21st, 1887 (*Gen. Stat. p. 1936*), which deals with terms of ten years and upwards, and, in a series of sections, places them, together with transfers and mortgages of the same, upon the footing of conveyances of freehold estates.

Finally, complainant relies upon the revision of the "Act. concerning conveyances," found in *P. L. of 1898 p. 670,* and especially upon sections 21, 41, 42, 53, 54 and 66 of that act.

Section 21 enumerates the various instruments which may be recorded, and divides them into two classes—*first,* those affecting title to land, in which is included leases for a term not less than two years, and *second,* deeds not affecting title to lands, but affecting goods, chattels and personal property, and provides for a distinct registry of each class.

The forty-first section provides for the registry of leases of lands in the same book, to be entitled "Deeds," in which other conveyances of land are registered; and all assignments of leases, by way of mortgage, in a book to be entitled "Mortgages;" and all chattel mortgages in a book to be entitled "Chattel Mortgages;" thus making a clear distinction between mortgages of leasehold estates and mortgages of pure chattels.

·The forty-second section makes it the duty of the clerk to record all instruments presented to him properly acknowledged.

The fifty-third section speaks of instruments which shall *have been* or shall be duly executed or acknowledged.

The fifty-fourth section provides that all instruments mentioned in the twenty-first section shall, until duly recorded or lodged for record in the county clerk's office,

"be void and of no effect against subsequent judgment creditors, without notice, and against all subsequent *bona fide* purchasers and mortgagees for valuable consideration, not having notice thereof, whose· deed or mortgage shall have been first duly recorded."

And the sixty-sixth section provides that the lease of any lands, tenements or real estate for a term not less than two years, shall be liable to sale under a judgment or decree, in like manner as estates of freehold are now liable to be sold thereunder.

The mortgage of complainant was recorded under the provisions of this act; and one question is whether it is entitled to the benefit of the provisions of that act, it having been executed more than a year before the act was passed. I have been unable to find anything in the act to show that its provisions were limited to instruments. executed after its passage. All the indications are that it had application to all instruments.

The twenty-second section, in providing for acknowledgments taken out of the state, provides for instruments heretofore made and executed, or hereafter to be made and executed, that shall have been or shall be acknowledged by the party, &c.

I can see no reason why the complainant should not have the benefit of this act.

It is thoroughly settled in this state, by the decision of the court of errors and appeals in the case of *Flemington National Bank* v. *Jones, 5 Dick. Ch. Rep. 244,* and, on appeal, *5 Dick. Ch. Rep. 486,* that, in the absence of a fraudulent intent otherwise manifested, the mere withholding from the record of a mortgage of real estate for any period of time will not postpone it to mortgages recorded after its record.

There is in the present case no contention, or room therefor, that the complainant's mortgage was withheld from record under

such circumstances as would postpone it to any creditor acquiring a lien subsequent to the date of its actual record. If this be so, it seems to follow clearly enough that if this mortgage is to be dealt with as an ordinary mortgage of real estate, complainant is entitled to the relief it asks.

The defendants, however, in answer to these positions, claim that the mortgage in question, although it comes within the purview of sections providing for recording of a mortgage of this kind in books provided for that purpose, yet is, after all, a mortgage of chattels, and subject to the special legislation aimed at that species of security, and particularly to the fourth and ninth sections of the act of May 2d, 1885 (*P. L. of 1885 p. 318; Gen. Stat. pp. 2113, 2114*), which was under consideration in the case of *Roe* v. *Meding, 8 Dick. Ch. Rep. 350.*

It is conceded that if the mortgage was properly recorded under the act of 1898, and is entitled to the benefit of that act, the complainant must prevail, for the language of that act is different from that of the Chattel Mortgage act, in that it renders unrecorded instruments void only against subsequent judgment creditors without notice and against all subsequent *bona fide* purchasers and mortgagees for valuable consideration. And the lien of the executors, in trust for the creditors, did not arise until after the death of the testator.

It is urged that the revision of 1898 is confined in its scope, by its title—"An act respecting conveyances"—to that class of written instruments known in legal language as "conveyances," and that assignments of leases of land are not included therein. But a perusal of the act will show that this construction, if adopted, is most destructive in its consequences.

Granting, for argument's sake, however, that it must be confined to conveyances of land, I think that an instrument which "transfers" an interest in land "conveys" such interest, and that it matters not how small in quantity and how short in time of duration that interest may be. A man who is in possession of land as tenant from year to year has an interest therein which he may "convey."

The defendants, however, seek to overcome the force of the classification adopted by the revision of 1898 by the force of

the decision of the court of errors and appeals in the case of *Hutchinson* v. *Bramhall, 15 Stew. Eq. 372.* That was a contest, as here, over the proceeds of the sale of a leasehold interest, much like that created by the lease in this case. It arose between a mortgagee and judgment creditor. The mortgage was first in time and of record, provided a record in the book of chattel mortgages was sufficient. It was not recorded in the book of mortgages of land. In the court below Vice-Chancellor Van Fleet held (*13 Stew. Eq. 83*), on the authority of *Decker* v. *Clarke, 11 C. E. Gr. 163,* and *Spielmann* v. *Kliest, 9 Stew. Eq. 199,* and cases there cited, that the instrument should have been recorded as a mortgage of land, and not of chattels, and that the record in the book of chattel mortgages was insufficient to maintain its priority according to its actual date.

The court of errors and appeals held that its record as a mortgage of lands was not necessary, and that its record in the book of chattel mortgages was sufficient to give it its natural priority.

But the court did not decide, because it was not called upon to decide, that if the mortgage had been, after due acknowledgment, recorded in the book of mortgages of land, such record would not have been sufficient to maintain its priority.

It is manifest from the report that the mortgage there in question was in form an ordinary chattel mortgage, containing only the verbiage found in those instruments, and that it contained the affidavit required to be annexed to that class of instruments.

No doubt the parties acted in good faith in adopting that character of security and in its record, and may have adopted it out of abundant caution. Notice given to the actual searcher was quite as efficient from the record in the one book of records as from the other. So that Vice-Chancellor Van Fleet's decision (that these honest efforts of the parties to do their full duty to the creditors of the mortgagor were of no value) worked a great hardship, which naturally induced the court of review to criticise it severely and to seek some ground upon which to avoid its effects.

But a careful review of the authorities cited in both courts, and the reasoning advanced on each side, induces me to venture

the remark that the decision should be confined to the precise point decided, namely, that the record of the mortgage in the book of chattel mortgages was sufficient, and its record in the book of mortgages of land not necessary in order to maintain its natural priority.

But, giving the decision its fullest effect, I must decline to hold that it decides that, notwithstanding the subsequent legislation above referred to, mortgages of leasehold interest must be recorded as chattels mortgages in order· to maintain priority. The legislature had the undoubted right to·make such a· classification, and to point out how and where such instruments should be recorded, and the effect of such record.

I have said that the court of errors and appeals did not, in *Hutchinson* v. *Bramhall,* decide that a record of the mortgage in the book of mortgages of land would not have been sufficient, and I feel at liberty to suggest that it is difficult to see how they could have done so in the face of the twenty-second section of the "Act concerning conveyances" (*Rev. of 1877 p. 157*), above cited. And I think the complainant might rest its case simply upon the strength of that section, which was in force at the time its mortgage was given, but was superseded by the revision of 1898. And further, I think that the provisions of the revision of 1898 are, of themselves, quite sufficient to maintain the complainant's position.

I shall therefore advise a decree that the complainant is entitled to the proceeds of the sale of the leasehold interest.

In directing that sale a question arose as to whether certain fixtures in the building would pass therewith as part of the leasehold interest, or whether they·should go to the executors. Those fixtures were sold separately by the master, and the fund may be separately dealt with, and its proper disposition will be considered by me hereafter. ·