This is a bill to foreclose a mortgage given by Elizabeth J. Early in her lifetime to the Chelsea-Second National Bank and Trust Company of Atlantic City. The answering defendants are Anna Welch and Charles J. Welch, individually and as executors of the estate of Mrs. Early.
A decree pro confesso has been taken against the receivers of the closed Chelsea-Second National Bank and Trust Company.
Defendants Welch were made parties defendant in their individual capacity because of their alleged ultimate liability for deficiency.
The bill recites that the mortgage was given as collateral security for four notes totaling $8,260. The proofs substantiate this allegation and show further that complainant became the holder for value of these notes, as follows: November 25th, 1932, $4,900; January 16th, 1933, $2,050; January 23d 1933, $540.
The proofs also show that the $5,200 note was reduced to $4,900, the $2,400 note was reduced to $2,050 and the $545 note was reduced to $540, and that the complainant holds the renewal notes in these amounts.
The fourth note mentioned in the bill of complaint (Ferry note) was not proved and may not be included in the decree.
It is thus apparent that at the time of the execution of the mortgage in question Mrs. Early was indebted to the Bank and Trust Company and that the mortgage was given to secure her note indebtedness and that the Bank and Trust Company held the mortgage as collateral security for the payment of this indebtedness.
The Bank and Trust Company closed its doors, through appropriate action of the comptroller of the currency, on *Page 92 
January 27th, 1933, and a receiver was duly appointed on that date, and it is conceded that at the time the bank closed as aforesaid Mrs. Early had three separate accounts in the bank totaling $1,070.18, for which amount the executor defendants claim a right of set-off against their decedent's indebtedness, as represented by the notes aforesaid.
There is no evidence that complainant was other than an innocent holder for value of the notes in question and as heretofore set forth, it became such holder prior to the closing of the bank, without any knowledge, in so far as the evidence shows, of the insolvency of the bank, so that the set-off may not be allowed.
The next point urged is that complainant was not the holder of the mortgage at the time the bill of complaint was filed, but the proof is that complainant took possession of the mortgage on January 28th, 1933, over a year before the filing of the bill.
It is true that the mortgage was not assigned by written assignment but that an agent of the complainant procured it from the Bank and Trust Company on the day after the bank closed its doors. There is no evidence, however, of any unauthorized procurement of the mortgage by the complainant, and it is settled law that a mortgage, being a chose in action, may be assigned by mere delivery, without writing, Hutchings v. Low,13 N.J. Law 246 (at p. 248); Morris Canal and Banking Co. v. Fisher,9 N.J. Eq. 667; Galway v. Fullerton, 17 N.J. Eq. 389, being a few of the authorities; and section 31, 3 Comp. Stat. 1910 p.3418, requiring assignments to be in writing, does not invalidate the mortgage in suit in the hands of the complainant.Kamena v. Huelbig, 23 N.J. Eq. 78.
The defendants seem not to attack the transfer of the notes secured by the mortgage but rely on the non-written assignment of the bond and mortgage, overlooking the fact that an assignment of the debt, i.e., the transfer of the notes to the complainant, which notes were secured by the bond and mortgage, operates as an assignment of the bond and mortgage. 19 R.C.L. § 120 pp. 347,348. *Page 93 
The mortgage covers chattels as well as real estate and the defendants did not, in their original answer, attack the validity of the chattel mortgage, but at the final hearing were permitted to file an additional answer wherein they, as executors, allege that the chattel mortgage is not a lien on the goods and chattels enumerated therein because the affidavit of consideration annexed thereto fails to properly state the consideration of said mortgage, as required by section 4 of the Chattel Mortgage act.1 Comp. Stat. 1910 p. 463, as amended by P.L. 1928 p. 131.
Irrespective of any defect in the affidavit of consideration, the defendants, in their individual capacities, have no standing to attack the validity of the chattel mortgage. It was good as between the decedent and the mortgagee during the decedent's lifetime and is good as between the mortgagee and decedent's heirs and representatives, and may only be attacked by some person or persons who is not only a creditor of the mortgagor but who has a lien fastened on the goods and chattels by the mortgage. Receiver of Graham Button Co. v. Spielmann, 50 N.J. Eq. 120.
In Currie v. Knight, 34 N.J. Eq. 485, it was held that, "the direction of the statute, that the assets of an insolvent estate shall be distributed ratably among the creditors of the decedent, gives them a lien on such assets, and entitles them to a standing to contest the validity of a chattel mortgage." This case has been followed without exception. See Schwalber v.Ehman, 62 N.J. Eq. 314; Lembeck Betz Eagle Brewing Co. v.Kelly, 63 N.J. Eq. 401; Hildebrand v. Willig, 64 N.J. Eq. 249.
It is section 99 of the Orphans Court act (3 Comp. Stat. p.3848) that provides that the estate, real and personal, "in case the same shall be insufficient to pay all his or her debts, shall be distributed among his or her creditors, in proportion to the sums that shall be due to them respectively," which gives the creditors standing, as set forth in the case of Currie v.Knight, supra, and I find no reported case in which a creditor of a solvent estate has any such status.
In Schwalber v. Ehman, supra (at p. 318), the court said *Page 94 
that an administrator seeking to set aside a fraudulent conveyance could not succeed, "unless it be alleged and proven that there is not enough estate of the decedent to pay his debts."
It is true that in Jaburg v. Kirschenbaum, 90 N.J. Eq. 510,
the court held that a creditor of an estate, whether that estate be solvent or insolvent, had a standing to contest a sale in fraud of creditors under the provisions of the Bulk Sales act, but in that case Vice-Chancellor Lane said, in referring to the rule that a creditor must have his debt fastened on the debtor's property by law, judicial process or some other way, "the tendency of the courts is to limit the application of the rule where the interests of justice require."
In the Jaburg Case, the creditor had no means of knowing whether the estate was solvent or insolvent. The provisions of the Orphans Court act forbade suit against the administrator without leave of the court for a period of six months and if leave of the court were granted within that period, execution could not issue upon the judgment within the six months, and until the creditor had his judgment against the decedent vendor he could not proceed against decedent's vendee and in all events must proceed under the Bulk Sales act within ninety days. It was to correct this situation that equity stepped in, because "the interests of justice" so required.
Under the rule as laid down in the Jaburg Case, it may well be that equities might arise wherein the executors representing creditors might be permitted to attack the validity of a chattel mortgage without a showing of present insolvency, but in order to do so, such an executor must show the equity. He cannot merely say, I am an executor and as such represent creditors to the stated amount, without a further showing as to the value of the assets or some reason that the assets covered by the chattel mortgage or a part thereof are necessary for the payment of the debts.
At the conclusion of the final hearing the executors rested without any proof whatsoever as to the financial condition of the estate, but were given permission to appear at a later date *Page 95 
to offer such evidence as they might be advised, at which time the executors testified that there were certain claims filed by creditors totaling a certain amount, some of which had been paid and some not. The executor further testified that the only assets of the estate, other than those covered by the mortgage, consisted of certain real estate. There was no proof as to the value of this real estate and no proof either that the estate had been declared insolvent or that application had been made to the orphans court either for a decree of insolvency or for an order to sell lands to pay debts, although Mrs. Early died on November 6th, 1935.
There being no evidence to justify the court in finding that decedent's estate is insolvent or of any equity under which the assets covered by the mortgage are necessary either in whole or in part to pay debts, the executors have not put themselves in position to attack the validity of the chattel mortgage.
Decree for complainant.