**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0834-17T1

GE MONEY MORTGAGE
HOLDING COMPANY, LLC,
as successor-in-interest to GE
MONEY MORTGAGE HOLDING
CORPORATION, as Owner,

      Plaintiff-Respondent,

v.

PEGGY ANN MONDICS, ROBERT
S. MONDICS, PAULINSKILL LAKE
ASSOCIATION, and MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC., as nominee for
GATEWAY BUSINESS BANK,
d/b/a LENDERS DIRECT, a California
corporation,

      Defendants,

and

 ROBERT LASALA,

      Defendant-Appellant.

_____

Argued November 13, 2018 – Decided December 10, 2018

Before Judges Gooden Brown and Rose.

On appeal from Superior Court of New Jersey, Chancery Division, Sussex County, Docket No. F-036472-13.

Thomas W. Sweet argued the cause for appellant.

Stuart I. Seiden argued the cause for respondent (Duane Morris, LLP, attorneys; Brett L. Messinger, Stuart I. Seiden, and Jessica A. Kolansky, on the brief).

PER CURIAM

In this residential foreclosure action, defendant Robert LaSala appeals from the May 12, 2017 Chancery Division order granting summary judgment to plaintiff GE Money Mortgage Holding Company, LLC (GE), striking his contesting answer, deeming the dispute an uncontested foreclosure, and returning the matter to the Office of Foreclosure for entry of final judgment. We affirm.

We confine our review to the motion record before the motion judge, Ji v. Palmer, 333 N.J. Super. 451, 463-64 (App. Div. 2000), viewed in the light most favorable to defendant. Angland v. Mountain Creek Resort, Inc., 213 N.J. 573, 577 (2013) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)). On February 16, 2007, Robert and Peggy Mondics executed a note to Gateway Business Bank, d/b/a Lenders Direct (Gateway), in the amount of

$248,000, with an interest rate of 7.960% annually. To secure payment of the note, the Mondics executed a non-purchase money mortgage to Mortgage Electronic Registration Systems, Inc. (MERS), as nominee for Gateway, which encumbered residential property located in Newton. On the same date, February 16, 2007, the Mondics executed a second note to Gateway in the amount of $62,000, with an 11.125% interest rate. To secure payment of the second note, the Mondics executed a second mortgage to MERS, as nominee for Gateway, encumbering the same property. Both mortgages were recorded on March 6, 2007, in the Office of the Sussex County Clerk in book 8032, page 279 and 299, respectively.

Since July 1, 2007, the Mondics defaulted on their mortgage payments. After MERS as nominee for Gateway assigned both mortgages to WMC Mortgage Corporation (WMC), on September 21, 2007, WMC filed a foreclosure complaint seeking to foreclose on both mortgages. Although count one of the complaint alleged that the second mortgage was "unrecorded at this time," the count identified both mortgages with specificity, and asserted that both the first "and second mortgage[s] [were] . . . in default and plaintiff desire[d] to report its lien and foreclose th[e] second mortgage, along with the first mortgage."

A-0834-17T1

However, the final judgment entered in WMC's favor on February 17, 2009, only identified the first mortgage. On July 2, 2014, Sussex County held a sheriff's sale for the property subject to the writ of execution stemming from the February 17, 2009 final judgment, and WMC was the successful bidder. On October 6, 2014, a sheriff's deed was recorded in book 3345, page 423.[1] WMC then transferred the deed to U.S. Bank National Association (U.S. Bank), as trustee for the RMAC Trust, Series 2013-3T, and their successors and/or assigns. On October 5, 2015, U.S. Bank conveyed the property to defendant for $196,450, through a special warranty deed, which was recorded on November 24, 2015, in book 3377, page 530.

Plaintiff acquired the second mortgage from WMC and, on October 9, 2013, filed a foreclosure complaint, alleging that WMC assigned the second mortgage to plaintiff on August 23, 2013, which assignment was recorded with the Sussex County clerk on September 10, 2013, in book 9175, page 336. However, because the original assignment from MERS to WMC could not be located, on March 4, 2016, on plaintiff's motion, Judge David J. Weaver entered an order (March Order) deeming the second mortgage equitably assigned from

_____

[1] Although the recorded sheriff's deed indicated that no prior mortgages or liens were outstanding, consistent with the February 17, 2009 final judgment, the sheriff's deed described with specificity only the first mortgage.

A-0834-17T1

MERS to WMC in order to validate the later assignment to plaintiff. After

finding that "a diligent search" and "good faith attempt to locate the original

assignment" had been made, the judge determined that:

> Plaintiff has demonstrated that it is entitled to enforce the note, which simultaneously establishes that it also holds [d]efendant's mortgage[]. . . .
>
> Plaintiff certifies that it is in possession of the [n]ote, dated February 16, 2007, which has been endorsed in blank. . . . Plaintiff argues that possession of the [n]ote makes it clear that the [m]ortgage was assigned to [p]laintiff by the original mortgagee's assignee . . . . Moreover, [p]laintiff submits a true and correct copy of the [n]ote. . . . Accordingly, [p]laintiff has the right to enforce the instrument and [p]laintiff's assignment of mortgage is deemed valid.

Thereafter, on March 28, 2016, after running a tax or title search and

discovering that defendant had acquired the property,[2] plaintiff filed a second

amended foreclosure complaint, alleging:

> Robert LaSala[] is hereby joined as a party [d]efendant to this . . . foreclosure action to divest any right, title or interest [he] may claim, in, to or against the mortgaged property by virtue of the following deeds and events. In 2007, WMC . . . was given a mortgage with a superior priority to [p]laintiff . . . . In a separate foreclosure action[,] WMC . . . failed to join [plaintiff]

---

[2] Plaintiff filed its first amended complaint on January 16, 2015, indicating that "after diligent search, a copy of the assignment of mortgage [from MERS to WMC] [could not] be located," prompting the motion practice that resulted in the issuance of the March Order.

A-0834-17T1

as a defendant, therefore the subject note and mortgage in this action were not divested in title. The property then went to sheriff sale . . . . The subject property was then sold to a third[-]party Robert LaSala on [October 5, 2015]. Mr. LaSala's purchase is subject to [p]laintiff's mortgage, as title was not clear during the transfer of either the sheriff sale deed or the third[-]party deed.

Defendant filed a contesting answer, setting forth numerous affirmative defenses, including his bona fide purchaser status, estoppel, waiver, unclean hands, and improper purpose.

On February 6, 2017, plaintiff moved for summary judgment and an order striking defendant's answer. In support, plaintiff certified that prior to the commencement of the action, it was in possession of the second note and remained in possession. Further, plaintiff certified it had no knowledge of the prior foreclosure at the time it acquired the second note, and was not aware that defendant was the property owner at the time plaintiff applied for the March Order. On March 16, 2017, defendant cross-moved for summary judgment and an order vacating the March Order due to the lack of notice to defendant and the absence of defendant as a necessary party.

Following oral argument, Judge Weaver issued a twelve-page decision and written statement of reasons, granting plaintiff's motion for summary judgment, striking defendant's answer, and denying defendant's cross-motion for

A-0834-17T1

summary judgment. Finding "no genuine issues of material fact," the judge concluded the Mondics "and [d]efendant, by assignment," defaulted on the second note and second mortgage, "which g[ave] [p]laintiff the right, at its option to accelerate the loan, and commence foreclosure proceedings against the mortgaged premises."

Citing Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993), aff'd, 273 N.J. Super. 542 (App. Div. 1994), and Old Republic Insurance Company v. Currie, 284 N.J. Super. 571, 574 (Ch. Div. 1995), the judge noted that

> [t]o obtain relief in a mortgage foreclosure action, the mortgagee must establish: (1) the validity of the documents; (2) the default itself; and (3) the right to foreclose. . . . If the defendant's answer fails to challenge the essential elements of the foreclosure action, plaintiff is entitled to strike defendant[']s answer.

Further, according to the judge, "[a] person has standing to foreclose on a negotiated debt when they are 'a non[-]holder in possession of the instrument who has the rights of a holder.'" See N.J.S.A. 12A:3-301.

In determining that plaintiff "ha[d] standing to enforce the note" and foreclose on the property, the judge explained:

> The record establishes [p]laintiff as the owner of the [s]econdary [n]ote as certified by [p]laintiff's

representative. Further, [p]laintiff is also the holder of the [s]econdary [n]ote. Plaintiff's physical possession of the [s]econdary [n]ote, vests [plaintiff] with the rights of the transferor to enforce the instrument, including any right as a holder in due course pursuant to [N.J.S.A.] 12A:3-203(b). Accordingly, under [N.J.S.A.] 12A:3-301 and [N.J.S.A.] 12A:3-205(b), [p]laintiff is a "holder of the instrument" and has standing to enforce the note.

The judge also rejected defendant's affirmative defenses ad seriatim. Initially, the judge dismissed defendant's contention "that he should have been included in the motion practice leading to . . . []the 'March Order'[]." According to the judge, because "the encumbrance follows the debt (the [s]econdary [n]ote in this case)," plaintiff's "assignment of mortgage [was] immaterial to its right to enforce the lien. When an interest in a right to payment, such as an interest in a note, attaches, it also serves to attach any interest in a corresponding mortgage. [N.J.S.A.] 12A:9-203(g)."

In specifically rejecting defendant's bona fide purchaser for value defense, the judge concluded defendant had both constructive and actual notice of the second mortgage prior to acquiring the property. Judge Weaver explained:

The [s]econdary [m]ortgage was recorded on March 6, 2007[,] . . . so [d]efendant was on notice of such encumbrance despite any future corrections of lost assignment documents (e.g., the March Order). Any recorded document affecting title to real property constitutes notice to all subsequent "purchasers,

8

mortgagees[,] and judgment creditors" of the execution of the document recorded. [N.J.S.A.] 46:26A-12(a). Moreover, a claim under a recorded document affecting the title to real property "shall not be subject to the effect of a document that was later recorded . . . ." [N.J.S.A.] 46:26A-12(b). Plaintiff also filed a lis pendens in connection with the instant foreclosure action on December 13, 2013, prior to [d]efendant's acquisition of the property on or around November 2015. . . . Such lis pendens put [d]efendant on notice of the instant litigation and the [s]econdary [m]ortgage. [N.J.S.A.] 2A:15-7(a).

In addition to constructive notice of the [s]econdary [m]ortgage . . . , [d]efendant had actual notice of the [s]econdary [m]ortgage at the time of purchase. Defendant's title policy includes the [s]econdary [m]ortgage as an exception. . . . Defendant's title insurer ultimately removed this exception from the policy and agreed to indemnify [d]efendant from any prior encumbrances or potential defects in title related to defective judicial proceedings.

Based on the record, the judge also found no evidence of "improper purpose in applying for the March Order," or that "[p]laintiff acted in bad faith and/or with unclean hands." The judge reiterated that "[t]he lien created by the [s]econdary [m]ortgage was in place on March 6, 2007, therefore such lien was not created by the March Order after [d]efendant had purchased the property." Moreover, according to the judge, a "review of the relevant documentation reveal[ed] that final judgment was entered only on the [f]irst [m]ortgage." The judge concluded:

9

Defendant does not allege any additional facts to support his affirmative defenses in his [a]nswer, nor does he articulate what additional discovery he might request in order to prove these affirmative defenses. In the absence of any legitimate denials or factual support for any affirmative defenses and separate defenses, this [c]ourt finds that no material issues of fact exist with respect to . . . [p]laintiff's right to foreclose, thereby striking [defendant's] [a]nswer and transferring this matter to the [f]oreclosure [u]nit as non-contested.

The judge entered a conforming order, and final judgment was later entered in favor of plaintiff on September 5, 2017. This appeal followed.[3]

First, defendant argues that the March Order should be vacated because defendant, as the current fee owner of the property, was an indispensable party, and should have been joined pursuant to Rule 4:28-1(a). Further, defendant argues that the failure of plaintiff to notify defendant of its motion practice as required under Rule 1:6-2 is fatal to the viability of the order. We disagree.

Rule 4:28-1(a) provides that:

A person who is subject to service of process shall be joined as a party to the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest in the subject of the action and is so situated that the disposition of the action in the person's absence may either (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any

---

[3] Prior to the scheduled November 29, 2017 sheriff sale, defendant's application for a stay pending appeal was granted on February 20, 2018, by the trial court.

A-0834-17T1

of the persons already parties subject to a substantial risk of incurring double, multiple, or other inconsistent obligations by reason of the claimed interest.

"Whether a party is indispensable depends upon the circumstances of the particular case," Jennings v. M & M Transp. Co., 104 N.J. Super. 265, 272 (Ch. Div. 1969), and such a determination "is a fact-sensitive issue." Toll Bros., Inc. v. Twp. of W. Windsor, 334 N.J. Super. 77, 90 (App. Div. 2000). Generally, "a party is not truly indispensable unless he has an interest inevitably involved in the subject matter before the court and a judgment cannot justly be made between the litigants without either adjudging or necessarily affecting the absentee's interest." Allen B. Du Mont Labs, Inc. v. Marcalus Mfg. Co., 30 N.J. 290, 298 (1959). "The nature and character of the claim in an action determines the identity and classification of the parties as necessary or indispensable." Jennings, 104 N.J. Super. at 272. "Moreover, absence of an indispensable party does not deprive the court of jurisdiction to adjudicate the issues among the parties who were joined." Toll Bros., Inc., 334 N.J. Super. at 91.

Here, the motion practice sought to correct the lost assignment of the second mortgage from MERS to WMC, not to enforce the lien on the property. As Judge Weaver explained, because the property was already encumbered by the second mortgage regardless of whether plaintiff moved to correct the chain

11

of title, defendant was not an indispensable party to the motion practice. Moreover, defendant's absence did not impair or impede his ability to later litigate the case and seek to protect his interest.

Likewise, plaintiff was not required to notify defendant of its January 16, 2015 amended complaint and subsequent March Order pursuant to Rule 1:6-2. Rule 1:6-2 applies exclusively to motion practice among parties in an action. Under those circumstances, "[t]he entry of an order in the cause without notice to all parties is generally not proper, [Rule]1:5-1, even if certain parties are not directly affected, except for scheduling and administrative matters." Scalza v. Shop Rite Supermarkets, Inc., 304 N.J. Super. 636, 639 (App. Div. 1997) (quoting Zuckerman v. Piper Pools, Inc., 232 N.J. Super 74, 82-83 (App. Div. 1989)).

Here, plaintiff's amended complaint, filed January 16, 2015, disclosed the lost second mortgage assignment from MERS to WMC. Because defendant did not acquire the property until October 5, 2015, and his deed was not recorded until November 24, 2015, a title or tax search conducted "[p]rior to filing" the January 16, 2015 amended complaint as required by Rule 4:64-1(a)(1),[4] would

_____

[4] Rule 4:64-1(a)(1) provides:

not have revealed defendant's purchase of the property. Instead, defendant's interest was discovered prior to filing the second amended complaint on March 28, 2016, at which point defendant was duly joined as a party. We are satisfied that Judge Weaver correctly denied defendant's request to vacate the March Order because, at that juncture, defendant was neither an indispensable party nor a party requiring notification.

Next, defendant argues that before plaintiff made its ex parte motion to plug its chain of title to the property, plaintiff had, at best, a "wild" mortgage, which was not enforceable as a lien on defendant's property. "[I]t is settled law that a mortgage, being a chose in action, may be assigned by mere delivery, without writing." FRB v. Welch, 122 N.J. Eq. 90, 92 (Ch. 1937). Pursuant to N.J.S.A. 12A:9-203(g), "[t]he attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal

> Prior to filing an action to foreclose a mortgage, . . . the plaintiff shall receive and review a title search of the public record for the purpose of identifying any lienholder or other persons and entities with an interest in the property that is subject to foreclosure and shall annex to the complaint a certification of compliance with the title search requirements of this rule.

or real property is also attachment of a security interest in the security interest, mortgage, or other lien."

Here, contrary to defendant's argument, plaintiff is entitled to enforce an instrument, such as the second note, if it is "the holder of the instrument, a non[-]holder in possession of the instrument who has the rights of a holder, or a person not in possession of the instrument who is entitled to enforce the instrument." N.J.S.A. 12A:3-301. To enforce plaintiff's lien on the property, it only needed to prove its right to enforce the second note. If plaintiff can enforce the second note, the second mortgage automatically attaches. Thus, we agree with Judge Weaver that the second mortgage automatically attached because of plaintiff's ability to enforce the second note.

Next, defendant argues the judge erred in granting plaintiff summary judgment. To support his argument, defendant renews his assertions rejected by Judge Weaver that plaintiff had no standing, acted in bad faith, and with unclean hands. In contrast, according to defendant, he was a bona fide purchaser without notice. We disagree. After carefully reviewing the record developed in this case, we affirm substantially for the reasons expressed by Judge Weaver in his comprehensive written statement of reasons. We add only the following comments.

14

Our review of a ruling on summary judgment is de novo, applying the same legal standard as the trial court. Townsend v. Pierre, 221 N.J. 36, 59 (2015). "Summary judgment must be granted if 'the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment . . . as a matter of law.'" Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting R. 4:46-2(c)). "If there is no genuine issue of material fact, we must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Court Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)). We accord no special deference to the trial judge's conclusions on issues of law. Nicholas v. Mynster, 213 N.J. 463, 478 (2013).

"The only material issues in a foreclosure proceeding are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." Pardo, 263 N.J. Super. at 394. A party seeking to foreclose must demonstrate "execution, recording, and non-payment of the mortgage." Thorpe v. Floremoore Corp., 20 N.J. Super. 34, 37 (App. Div. 1952). In addition, the foreclosing party "'must own or control the underlying

debt'" to establish standing to foreclose. <u>Deutsche Bank Nat'l Tr. Co. v. Mitchell</u>, 422 N.J. Super. 214, 222 (App. Div. 2011) (quoting <u>Wells Fargo Bank, N.A. v. Ford</u>, 418 N.J. Super. 592, 597 (App. Div. 2011)). In <u>Mitchell</u>, we held that possession of the note, as clearly established here, or an assignment of the mortgage predating the original complaint, conferred standing. <u>Id.</u> at 224-25. A mortgagor opposing summary judgment has a duty to present facts controverting the mortgagee's prima facie case. <u>Spiotta v. William H. Wilson, Inc.</u>, 72 N.J. Super. 572, 581 (App. Div. 1962). Unexplained conclusions and "[b]ald assertions are not capable of . . . defeating summary judgment." <u>Ridge at Back Brook, LLC v. Klenert</u>, 437 N.J. Super. 90, 97-98 (App. Div. 2014).

Applying the above standards, we discern no reason to reverse the grant of summary judgment. We have considered defendant's claims and reject them as lacking sufficient merit to warrant further discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0834-17T1